HILDRETH v. THIBODEAU.

(Circuit Court, D. Massachusetts. July 31, 1902.)

No. 1,487.

**1. Specific Performance—Requiring Conveyance by Defendant—Necessity of Showing Title.**

A court cannot decree specific performance of a contract by which defendant agreed that complainant should be the owner of all inventions and improvements in a machine made by him while in complainant's employ, by requiring defendant to assign an application made by him for a patent, where complainant testifies that the invention claimed in such application is his own, and not defendant's, since in that case defendant has no title thereto, and no right to a patent which he can convey, nor has he made any invention or improvement which is covered by his contract.

**2. Same—Assignment of Application for Patent—Pendency of Interference Proceedings.**

A bill will not lie to compel specific performance of a contract by which defendant agreed that complainant should be the owner of any invention made by him, by requiring defendant to assign to complainant an application made by him for a patent, where plaintiff also has an application pending for a patent covering the same invention, and interference proceedings between them are before the patent office for adjudication.

In Equity. Suit for specific performance.

Alex P. Browne, for complainant.

William Quinby, for defendant.

COLT, Circuit Judge. This is a bill for the specific performance of the following agreement:

"Whereas, Herbert L. Hildreth, of Boston, candy manufacturer, is desirous of having perfected and manufactured a certain machine or machines for use in the manufacture of candy, and especially for sizing, shaping, cutting, wrapping, and packing; also the pulling of molasses candy; and whereas, I, Charles Thibodeau, being a skilled mechanic, and desirous of entering the employ of said Hildreth for the purpose of constructing, improving, and perfecting such machinery: Now, therefore, in consideration of such employment, and of the payment of wages to me at the rate of ($3.25) three dollars and twenty-five cents per day, I hereby agree with said Hildreth to enter his employ, and that I will give him my best services, and also the full benefit and enjoyment of any and all inventions or improvements which I have made or may hereafter make relating to machines or devices pertaining to said Hildreth's business. I also further agree that, should said Hildreth not desire to patent any of said inventions or improvements, but to keep the same secret, I will do all in my power to assist him in this, and will not disclose any information as to the same or any of them, except at the request of the said Hildreth.

"Signed at Boston, Mass., this 29th of May, 1897.

"Charles Thibodeau."

It appears from the bill and evidence that the complainant claims title to the same invention which he asks to have assigned to him under the contract. After setting out the agreement, the bill proceeds with the following allegations:

"(9) That while the defendant was in your orator's employ he worked upon a machine owned by your orator, and designed and adapted to perform an operation known as 'pulling' the candy manufactured by your orator, upon which machine your orator applied for letters patent of the United

States under date of September 21, 1900, which application was subsequently allowed, and was about to issue, when your orator was notified for the first time by the United States patent office that another application for the same subject-matter had been filed, and that an interference between that application and your orator's application would be declared. (10) That under the statutes of the United States and the rules of the United States patent office it was not possible for your orator to learn the name of the applicant whose application for patent was deemed to interfere with your orator's until the declaration of interference, so called, was made by the patent office upon the 13th day of March, 1901, and a copy thereof received by your orator through the mails on the 14th day of March, 1901, whereby your orator learned for the first time that the defendant was the applicant for letters patent for a candy-pulling machine adjudged by the United States patent office to interfere and be identical with the machine described in your orator's application for patent. (11) That the said machine upon which said letters patent have been applied for by the defendant is a machine covered by the contract above set forth between your orator and the defendant, and that the defendant made the oath required by law in support of his application for letters patent that he was the inventor of said machine, whereas your orator became and was and is the owner of the machine so alleged to have been invented by the defendant, and entitled to the same, and to the ownership and enjoyment of any letters patent which have been or may be hereafter granted therefor."

From the allegation of the bill it appears that the candy-pulling machine invented by the complainant has been declared by the patent office to be identical with the machine described in the defendant's application for a patent, and the prayer of the bill is that the defendant be ordered "to execute a suitable assignment in writing to your orator of the said invention and the said application for letters patent." The identity of the two inventions further appears from the proceedings in the patent office. The complainant amended his original application by the insertion of claims 1 and 2 of the defendant's application, so that identically the same subject-matter is involved in the interference proceedings. In a letter addressed to the complainant, dated March 13, 1901, the patent office says:

"The subject-matter involved in the interference is: (1) In a candy-pulling machine, in combination, a series of pins or candy-pulling members, and means for moving a part of said members in intersecting paths, whereby said members automatically feed and pull the candy. (2) In a candy-pulling machine, in combination, a series of pins or pulling members, and automatically acting means for causing said members to feed the candy to each other and pull the same. The counts are claims 2 and 3 of your application, and claims 1 and 2 of the application of Chas. Thibodeau, of Somerville, Mass."

Further, the complainant, in his testimony, declares that the defendant never made any invention or improvement in candy-pulling machines, or other machines relating to the complainant's business, while in his employ, except the addition of a roll in one machine. He further declares that he made the invention which this suit seeks to compel the defendant to assign to him:

"Q. What invention did Thibodeau make while in your employ? A. None. Q. What improvements did Thibodeau make while in your employ? A. Do you mean by my orders? Q. I mean what improvements did he originate while in your employ? A. As stated yesterday, he added a roll to simply rest on top of the paper roll; that is all. Q. Please state what orders you gave to Thibodeau, as referred to in the answer to interrogatory 213. A. To build a machine as it existed when it was completed by him. Q.

What particular piece of mechanism in that machine did you direct Thibodeau to construct? A. All of it. Q. The invention in that interference was made by Thibodeau, was it not? A. I understand the machine was, but the invention was not. Q. I understand that you claim to be the inventor of the invention that you are seeking by this suit to compel Thibodeau to assign to you. Is this right? A. Our claim in the patent office shows for itself. (Question repeated.) A. I think I have told you a number of times that I claim to be the inventor."

Upon this state of proof it is manifest that the complainant claims title in himself to the invention, the conveyance of which is the purpose of this bill. A complainant cannot assert title in himself, and at the same time call upon the defendant to convey title. The complainant's evidence goes even further, for he testifies that he did not hire the defendant as an inventor, and that the defendant has made no invention or improvements (except an immaterial one) in the machines which form the subject-matter of the contract. As the invention covered by the defendant's application conferred no right upon the defendant upon the complainant's own showing, a court of equity cannot decree specific performance. A bill for specific performance will not lie for the conveyance of property in which the defendant has no title. Kennedy v. Hazleton, 128 U. S. 667, 9 Sup. Ct. 202, 32 L. Ed. 576; Columbine v. Chichester, 2 Phil. Ch. 27; Id., 1 Coop. t. Cott. 295; Ferguson v. Wilson, 2 Ch. App. 77; Post v. Marsh, 16 Ch. Div. 395; Kempshall v. Stone, 5 Johns. Ch. 193; Morss v. Elmendorf, 11 Paige, 277; Milkman v. Ordway, 106 Mass. 232, 256. Kennedy v. Hazleton was a bill for specific performance under an agreement to assign to the plaintiff any patents which the defendant might obtain for improvements in certain machines. Having invented an improvement, in order to evade the agreement, the defendant induced a third person to make application in his own name, and to take out the patent. In the opinion of the court dismissing the bill, Mr. Justice Gray said:

"A court of chancery cannot decree specific performance of an agreement to convey property which has no existence, or to which the defendant has no title. A bill by vendee against vendor for specific performance, which does not show any title in the defendant, is bad on demurrer. And if it appears, by the bill or otherwise, that the want of title (even if caused by the defendant's own act, as by his conveyance to a bona fide purchaser) was known to the plaintiff at the time of beginning the suit, the bill will not be retained for assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law. * * * As the patent, upon the plaintiff's own showing, conferred no title or right upon the defendant, a court of equity will not order him to assign it to the plaintiff; not only because that would be to decree a conveyance of property in which the defendant has and can confer no title, but also because its only possible value or use to the plaintiff would be to enable him to impose upon the public by asserting rights under a void patent."

Upon the complainant's case as it stands there can be no decree for specific performance under the contract, for the defendant has made no "inventions or improvements" which are covered by the contract. What this bill really seeks is to have the court declare that the defendant, under his contract, has no right to set up a claim to an invention for a candy-pulling machine which was invented by the complainant; or to have the court determine in this suit the question of priority of invention. That question is now properly before the patent office for

adjudication in the interference proceedings. If it should be determined in those proceedings that the complainant was the prior inventor of the candy-pulling machine, this bill falls, for the reason that the defendant has made no invention, and there is nothing to assign under the contract. On the other hand, if it should be determined in those proceedings that the defendant was the prior inventor, it would then be time for the complainant to bring a bill for specific performance under the contract. The present bill, to say the least, is prematurely brought, and must be dismissed.

The defendant has filed a cross-bill asking that the agreement be adjudged invalid, and that it be delivered into court and canceled. It is not contended that the agreement was obtained by fraud or misrepresentation, but it is said that it belongs to that class of unconscionable contracts which a court of equity will not enforce. I am not satisfied that the contract is absolutely void as against public policy. Whether it belongs to that class of contracts the specific performance of which a court of equity will not enforce can be determined when such an issue is presented upon a proper bill.

A decree may be entered dismissing the bill and cross-bill; neither party to recover costs.