REBECCA E. WOOD et al. Appellees, vs. MARGARET A.
SHEFFER, Appellant.

*Opinion filed February 25, 1911.*

1. SPECIFIC PERFORMANCE—*complainant must have clothed her-
self with right to demand deed.* An alleged purchaser of land has
no right to apply to a court of chancery to compel a conveyance
of land unless she has, before filing the bill, clothed herself with
the right to demand a deed without anything further being done
on her part.

2. SAME—*the complainant must show that she has performed,
or offered to perform, all precedent conditions.* Before an alleged
purchaser of land is entitled to a decree of specific performance
she must show that she has performed, or offered to perform, all
precedent conditions imposed upon her, and that she has always
been ready, willing and eager to perform on her part.

3. SAME—*fact that complainant was unable to secure money to
tender is no excuse.* The fact that the complainant in a bill for
specific performance was unable to procure the money at the time
it was to be on deposit does not excuse non-performance of that
condition even though the defendants failed to furnish an abstract
of title to enable her to negotiate a loan, where it was no part of
the agreement that any abstract of title should be furnished.

4. SAME—*complainant must show reasonable excuse for failure
to perform on time.* While the failure to have the purchase money
on deposit at the time agreed upon may not, in equity, bar the
right of the proposed purchaser to a decree of specific perform-
ance, yet it is necessary in such case that there be a reasonable
excuse for the delay.

5. SAME—*when equity will not grant relief against consequence
of failure to perform on time.* If a proposed purchaser of land has
neither paid anything under the contract nor obligated herself to
pay anything in case of a default upon her part and is in no worse
condition after the termination of the contract than she was before,
and offers no reasonable excuse why she was not ready to perform
the contract at the time fixed, there is no ground for equitable re-
lief from the consequences of her failure to perform on time.

6. SAME—*when party is not entitled to decree of specific per-
formance.* A party is not entitled to a decree compelling the de-
livery of a deed to her by her co-heirs, even though the contract,
which was made without authority of the co-heirs, might be treated
as having been ratified by them, where she did not have the money
ready at the time specified for the delivery of the deed and has
never tendered the money or had it in her possession to tender.

WRIT OF ERROR to the Circuit Court of Jasper county; the Hon. THOMAS M. JETT, Judge, presiding.

OSSIAN CAMERON, and SHAMHART & ISLEY, (FRANK JOHNSTON, JR., of counsel,) for appellant.

CHARLES D. FITHIAN, and JOHN F. WOOD, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

On May 22, 1909, appellees filed their petition in the circuit court of Jasper county against Margaret A. Sheffer, M. W. Hanna, and A. S. Foulks as administrator of the estate of John Stephens, deceased, for the partition of 320 acres of land in Jasper county, alleging that John Stephens, then a resident of Ness county, Kansas, died intestate December 17, 1908, leaving him surviving Rebecca E. Wood, Alice E. Barker, Frank J. Stephens, James H. Stephens, Alfred E. Stephens and Margaret A. Sheffer, his children; Byrd Schaefer, Clara Young and June Young, children of Kate Young, a deceased daughter; Charles W. Miller, son of Lou Miller, a deceased daughter, and Robert W. Shelby, son of Minnie Shelby, a deceased daughter, as his only heirs-at-law; that at the time of his death John Stephens was the owner in fee of said real estate, which, upon his death, descended to his said heirs-at-law; that after the death of John Stephens the said James H. Stephens conveyed all his estate in said premises to Alfred E. Stephens, Frank J. Stephens, Rebecca E. Wood, Charles W. Miller and Charles D. Barker, and that the said Alfred E. Stephens conveyed all his estate in said premises to Rebecca E. Wood, and that the interests of the parties in said real estate are as above shown; that Robert W. Shelby is an infant, and that the defendant M. W. Hanna is tenant of the premises from year to year. The petition was docketed by the clerk on the chancery side of the court and summons

was issued and served upon the defendants as in chancery. The defendant Margaret A. Sheffer appeared and filed what was denominated a plea and answer, setting up as a defense to the action that after the death of her father she contracted for and purchased from the petitioners the premises sought to be partitioned at an agreed valuation of $7500, and that in pursuance of such contract the petitioners thereafter executed a warranty deed to her for the premises and delivered the same to their agent, John F. Wood, for delivery to her; that she was at the time of making such contract, has ever since been and now is, ready, able and willing to pay the purchase price agreed upon for said premises, but that said petitioners at the instigation of said John F. Wood, and said John F. Wood, have failed and neglected, and now refuse, to deliver said deed to her; that in equity she has the title to said premises and is entitled to specific performance of said agreement, for which she prays, and denies that petitioners are entitled to partition. This pleading concludes with a verification and a prayer for judgment. The petitioners filed a replication to the plea and answer, specifically denying the various allegations of new matter in avoidance therein contained and tendering issue as at law. Margaret A. Sheffer joined issue by filing a *similiter* to the replication. She also filed what was denominated a bill of interpleader and cross-petition, addressed to the judge of said circuit court in chancery sitting, in which she set up the same facts alleged in her plea and answer, and made such facts the basis for a prayer for the specific performance of the contract claimed to have been made between her and the petitioners for the conveyance of said real estate to her. The petitioners interposed a demurrer to this bill of interpleader and cross-petition, which was sustained by the court. A hearing was had before the court upon the issues formed upon the petition, and resulted in a decree finding the issues in favor of the petitioners, finding the interests of the parties as alleged

in the petition, ordering partition among the parties according to their interests as found by the court, and appointing commissioners to make such partition. Defendant Margaret A. Sheffer has appealed from that decree to this court.

One of the questions argued by the parties is whether the proceedings were at law or in chancery, and on account of the complex condition of the record it is difficult to determine whether the cause, as a whole, should be deemed one at law or in chancery. The suit was commenced by the filing of a petition under the Partition act, and was therefore instituted as a proceeding at law. The plea and answer filed by the defendant, the replication of the petitioners thereto and the *similiter* of the defendant were all pleadings at law. Appellant was the first to attempt to treat the cause as one in chancery by the filing of a pleading (which was, in effect, a cross-bill,) addressed to the chancellor of the court, and seeking affirmative relief which could only be granted in a court of chancery. The demurrer interposed by the petitioners was at that stage of the proceedings properly sustained on the ground that such pleading is not recognized in a suit at law, is not authorized by the Partition act, and the relief sought thereby was not such as could be granted in a proceeding at law. Notwithstanding the ruling upon the demurrer and the fact that the proceedings thus far, as shown by the pleadings, were at law, the court thereafter seems to have treated the cause as one in chancery. When appellant had closed her case appellees interposed a demurrer to the evidence offered by her, but the court refused to entertain the same, remarking: "This is a chancery case; it is a law case too, I reckon, but you have proceeded very much like a chancery case." The evidence has been preserved by a certificate of evidence instead of by a bill of exceptions, thus indicating that the circuit court finally regarded the cause as one in chancery. This attitude of the court has furnished ground for appellant to assign as error the action of the court in sustaining

the demurrer to the cross-bill and in refusing to decree specific performance of the alleged contract between appellant and the other heirs of John Stephens for the conveyance to her of the land in question. The case has not been presented to us, however, as one arising upon the demurrer to the cross-bill, but as one in which the decision depends entirely upon the evidence taken upon the hearing in the circuit court, and it is only in case we should hold that appellant has by the evidence established her right, in equity, to a decree for specific performance, that we are asked to hold the action of the court in sustaining the demurrer to the cross-bill erroneous,—and this in order that she may be in a position to have granted to her the affirmative relief which she seeks. The case is therefore one presented to us primarily upon its merits.

After issue had been joined, the court and the parties proceeded as though the cause stood for hearing upon the cross-bill as well as upon the petition and answer. The parties made full proof upon all questions relating to the alleged contract and the right of appellant, in equity, to demand specific performance thereof, and the appellant, as disclosed by the certificate of evidence, testified fully "on behalf of the cross-complainant in the cross-bill." In view of this attitude of the court and of the parties upon the hearing in the circuit court and the attitude of appellant in this court, it would serve no good purpose and would not promote the ends of justice to reverse the decree of the circuit court, in case we should find that the action of the court in sustaining the demurrer to the cross-bill was error, unless we also find that the appellant has by the evidence established her right, in equity, to a decree for specific performance. We shall therefore first consider the evidence and the question whether appellant thereby established her right, in equity, to demand specific performance of a contract for the conveyance of the premises to her.

John Stephens died intestate at Ness City, Kansas, December 17, 1908, leaving as his only heirs-at-law the six children and the descendants of the three deceased children as alleged in the petition for partition. A portion of these heirs resided in Ness county, Kansas, others resided in Oklahoma, Missouri and Arkansas, and appellant resided in Cook county, this State. At the time of his death John Stephens owned in fee the farm of 320 acres in Jasper county involved in this suit, a ranch of about 800 acres in Kansas, a house and lot and a store building in Ness City, Kansas, and a small tract of real estate in Colorado. John F. Wood, the husband of Rebecca E. Wood, one of the heirs residing at Ness City, was an attorney at law and took upon himself the burden of attempting to obtain a settlement and distribution of the estate left by John Stephens among the heirs without resorting to the courts. The matter was discussed by Wood with some of the heirs present at Ness City after the death of John Stephens, but it is not contended that all of the heirs ever met together and agreed upon any plan of settlement. During the latter part of January or the first part of February, in the year 1909, Frank Stephens, Charles W. Miller, Charles Barker, the husband of Alice E. Barker, and Samuel A. Sheffer, the husband of appellant, met with John F. Wood at his office in Ness City and placed estimates of value upon the property in Kansas, the estimate placed upon the ranch being $8 per acre, that upon the residence property $600 and that upon the store building $1500. At that time it seems to have been considered that some of the heirs would require their portions of the estate in cash, while others would be willing to take their portions in property and pay to those desiring the cash the value of their interests in money, and the purpose of this meeting, and of the subsequent meeting at Newton, in this State, seems to have been to determine some basis upon which propositions might be made for such settlement among the heirs. Subsequently, about February 20, Frank Stephens, Alfred Ste-

phens, Charles Barker, appellant, and Samuel A. Sheffer,
her husband, and John F. Wood, met at Newton, in Jasper
county, and after inspecting the land in question placed a
valuation of $22.50 per acre thereon, after "which, according
to the testimony of Samuel A. Sheffer, the parties from
Kansas stated: "Now we will go home and we will try
and divide this property up among the heirs. We have got
it all valued now among ourselves. Now we will go and
see what we can do dividing it up." Soon after the meeting
at Newton, John F. Wood entered into negotiations with
one Cooper, a real estate agent at Newton, for the sale of
the farm in Jasper county. On March 9, 1909, Cooper
wrote Wood that, in accordance with instructions from
Wood, he had offered the farm to A. F. Calvin, a pros-
pective purchaser, at $25 per acre and had agreed to furnish
an abstract showing clear title to the land; that Calvin had
intimated that he might pay $7500 for the farm, and Cooper
offered to reduce his commissions to $160 if the proposi-
tion was accepted, and enclosed a deed filled out with the
description of the land and the name of Calvin as grantee,
and urged Wood to have the deed executed by the heirs and
returned to the First National Bank of Newton as soon as
possible, so that Cooper might be in a position to close the
deal with Calvin in case the latter concluded to purchase the
land at the price suggested. Wood or his wife had appar-
ently written to appellant informing her of the negotiations
between Wood and Cooper and of the offer of sale at $25
per acre which Wood had directed Cooper to make, and in
answer to a letter upon this subject, which does not appear
in the record, appellant, on March 8, wrote to her sister,
Mrs. Wood, expressing surprise at a proposition to sell the
farm in Jasper county to strangers at what she termed such
a low price, and stating her understanding to be that the
price referred to was for sale to the heirs, only. She further
suggested that if any of the heirs wanted to sell they should
sell to some of the other heirs so as to keep their father's

property in the family, and proposed that she would go in
with any of the other heirs and buy the farm or would take
it all at $22.50 per acre, which price she considered a fair
valuation as compared with the valuation placed upon the
remainder of the real estate left by her father, and further
stated that she would not sell her interest until she was
compelled to do so. Addressing John F. Wood in the let-
ter, she requested him to try and divide the property among
the heirs, and expressed a willingness to pay him for his
trouble in her behalf. Thereafter Wood informed appellant
of the proposed sale to Calvin at $7500, and on March 14
received a letter from her in which she stated that she would
take the farm at the price offered by Calvin. Wood an-
swered this letter March 17, stating that they were pleased
at her decision, and that the heirs in Ness county had all
concluded that everything should be sold; that they had
an offer of $8 per acre for the ranch and that all the other
heirs were desirous of accepting that offer, and that inas-
much as appellant had stated in her letter that she would
not permit the ranch to be sold at that price, he presumed
she would purchase that also, and that the other heirs would
be pleased to sell to her. This letter contained the follow-
ing: "Of course you understand that all sales are for cash
in hand, and immediately upon delivery of either deed the
proceeds are to be sent by draft around to the several heirs
as their interests appear." There was enclosed with this
letter the deed to the Jasper county farm, with the name
of Calvin inserted as grantee, which had been executed by
all the heirs except Robert W. Shelby, James H. Stephens,
Clara Young, June Young, Byrd Schaefer and appellant,
Wood stating in the letter that the parties did not know
at the time of executing the deed that appellant would take
the farm, but that they had arranged to strike out Calvin's
name and insert that of appellant or any name she might di-
rect as grantee, and if she still proposed to take the farm she
should return the deed without signing and without change

and he would proceed to have it properly executed by the remaining heirs; that the deed would then be deposited in the Citizens' National Bank of Ness City, to be delivered to appellant upon the payment of $6466.67 into the bank for the other heirs. Wood further instructed appellant in the letter, in case she concluded to join in the sale to Calvin instead of taking the property herself, to execute the deed before a notary, and informed her that she would then receive $808.33 immediately upon delivery of the deed to Calvin. On March 25 appellant sent Wood a telegram stating that she would buy the farm at the price offered by Calvin and that she had sent a letter. This letter has been lost and the contents were not shown specifically, but the inference appears that appellant returned the deed unsigned by her, and stated that she would take the property and would send the purchase money to the Citizens' National Bank of Ness City. On March 26 appellant wrote Wood requesting him to send abstract of title at once to First National Bank of Newton, and also the deed, when completed. On March 27 Wood wrote to appellant, acknowledging receipt of the deed and stating that he would start that day to have the deed executed by the remaining heirs, and would probably be back at Ness City with the deed complete and ready to be turned over to the bank by April 3; that he would insert her name as grantee and would turn over with the deed all the old muniments of title, abstract, etc. By a postscript to the letter Wood advised appellant that James H. Stephens refused to sign the deed to her unless he could have his money on April 3, and that this made it necessary for her to have the money in the bank at Ness City by April 3. Wood then left Ness City to obtain the signatures of the remaining heirs to the deed. Afterwards, and prior to April 3, Robert W. Shelby, Clara Young, June Young and Byrd Schaefer executed the deed. Appellant failed to have the money at the bank at Ness City on April 3, and James H. Stephens, who lived several miles from Ness City and

248—40

who had gone there on April 3 in order to execute the deed and receive his portion of the purchase money, threatened to leave without executing the deed. He was induced to remain until April 5, and on that day Alfred E. Stephens, Frank J. Stephens, Rebecca E. Wood, Charles D. Barker and Charles W. Miller purchased his interest in all the real estate left by his father and received a deed therefor, and he also joined in and executed the deed to the Jasper county farm, which still contained the name of Calvin as grantee. On April 2 the appellant wrote to Wood inquiring why the deeds and papers had not been sent to Newton, and asking whether the abstract to the farm had been sent to the First National Bank of Newton and whether he had heard from that bank, and stating that the purchase money was at that bank ready to be sent to the Citizens' National Bank of Ness City. It appears that the only money or property owned or possessed by the appellant was her interest in the property left by her father, and that it was necessary for her to obtain title to and mortgage the Jasper county farm in order to obtain funds with which to purchase the interests of the other heirs in the farm; that before writing Wood that she would take the farm at a valuation of $7500 she had applied to Raef & Faller, of Newton, who had agreed to loan her the money necessary to purchase the interests of the other heirs provided she furnished an abstract of title to the land and a deed from the other heirs showing merchantable title in her and executed a mortgage on the farm as security for the loan, and it further appears that she never had the money in the bank at Newton, as stated in her letter. On April 12 Raef & Faller wrote appellant, informing her that they had not yet received the abstract to the land upon which she desired the loan, and stating that they could do nothing until they had a chance to examine the abstract. On April 11 Wood and Alfred Stephens called upon appellant at her home in Chicago, and Wood notified her that as her money was not at the bank in Ness

City on April 3, and as they had received an offer of $8000 for the Jasper county farm, she could not have a deed to the farm unless she paid $8000 therefor, and gave her until the following Tuesday to reach a decision. Appellant refused this offer, and Wood and Alfred Stephens departed for Newton, where they received an offer of $9000 for the farm, and attempted by telegrams and letters to induce appellant to sign a deed, which she refused to do. On May 3, 1909, Alfred Stephens conveyed his interest in the farm to Rebecca E. Wood, and this petition for partition was filed on May 22.

The record fails entirely to disclose any authority conferred by any of the heirs of John Stephens upon John F. Wood to enter into a contract with appellant, or any other person, for the sale of this property. All of the heirs who testified upon the trial expressly denied that any such authority was given, and it is clear that it was not the intention of any of the parties present at the meeting at Ness City or at Newton to enter into any contract at either of those meetings for the purchase or sale of any of the property left by John Stephens. That the persons present at those meetings, including appellant, who was represented by her husband, did not consider that an agreement had been there made that any of the heirs could purchase any of the property left by John Stephens at the valuation placed thereon at those meetings is apparent from the fact that the house and lot in Ness City were thereafter sold to Mrs. Wood at an increase of $50 and the store building at Ness City to one of the other heirs at an increase of $100 over the valuation placed upon them, appellant joining in the deeds therefor and receiving her share of the purchase money. John F. Wood, being an attorney and the husband of one of the heirs, apparently took upon himself the burden of effecting a settlement of the estate out of court. With this end in view he arranged meetings of a portion of the heirs at which values were placed upon the various

tracts of real estate, and he thereafter listed for sale with a real estate agent at Newton the Jasper county farm at $25 per acre, and, when a tentative offer of $7500 was made by Calvin, undertook to obtain the execution by all the heirs of a deed conveying the land to Calvin for a consideration of $7500. Appellant had previously been attempting to induce some of the other heirs to join with her in the purchase of the farm at the valuation which had been placed upon it at the meeting at Newton, but it is evident that had she succeeded in inducing any of the other heirs to so join with her, there was at that time no obligation resting upon the remaining heirs to sell their interests at such valuation. When she learned of the intended sale of the farm to Calvin for $7500 she notified Wood that she would take the farm at that price. A portion of the heirs had already signed the deed to Calvin, but Wood, by correspondence with appellant, entered into an agreement with appellant, which she accepted, in substance as follows: To substitute appellant's name in the place of Calvin's name as grantee in the deed, to obtain the execution of the deed by the remaining heirs, and to deliver the deed, with abstract and muniments of title, to the Citizens' National Bank of Ness City for delivery to appellant on April 3, 1909, upon the payment of $6466.67 to him for the remaining heirs, it being specifically stated that the sale was for cash in hand and that the money must be at the bank in Ness City on April 3, otherwise James H. Stephens would not execute the deed. The record fails to show that Wood had any authority from the heirs to enter into such agreement with appellant, and those who testified upon the hearing expressly denied that he had any authority to represent them in the matter. He did, however, proceed to have the deed executed by the remaining heirs upon the understanding that if the money was on deposit with the bank at Ness City when he returned, and if the heirs residing in Ness City were willing, he might substitute appellant's name for that of Calvin and

deliver the deed to the bank in exchange for the money. The money was not at the bank upon Wood's return to Ness City, and in accordance with his instructions Wood refused to deliver the deed to the bank and James H. Stephens refused to execute the deed, and an offer of $8000 for the farm being received upon Wood's return to Ness City, he obtained authority from all the tenants in common, except appellant, to substitute in the place of Calvin's name as grantee in the deed the name of any person paying $8000 or more for the property. With this authority he left Ness City for Illinois, and first called upon appellant at her home in Chicago and offered to substitute her name as grantee and turn over to her the deed if she desired to purchase the property for $8000. She refused this proposition, contending that she had already purchased the property at a valuation of $7500. Wood then sold the property for $9000, but appellant refused to join in the deed and the sale was not consummated.

The decree of the circuit court might very properly be sustained upon the ground that the evidence fails to show any contract by which appellees agreed to convey the land in question to appellant. But if it can be said that appellees, by executing the deed and by authorizing Wood to deliver it to the bank at Ness City for appellant upon the payment of $6466.67, thereby ratified the agreement between Wood and appellant and became bound according to its terms and provisions, still appellant could not now demand specific performance of the contract, because the evidence shows that she did not perform, and has never been able to perform, her part of the agreement. By the terms of the contract the sale was to be consummated on April 3 at the Citizens' National Bank of Ness City by the payment of the purchase money and delivery of the deed. On the prescribed day Wood appeared at the bank ready to deliver the deed upon payment of the consideration, but the purchase money was not then, and has never since been, at that bank,

and appellant has never made any tender of the money to appellees or to anyone for them, and her own testimony shows that she did not have, when she agreed with Wood to purchase the farm, and has never since had, the money necessary to carry out her part of the agreement. She contends that no advantage can be taken of her failure to have the purchase money at the bank in Ness City on April ·3 because time was not expressly made of the essence of the contract. At law the time fixed for the performance of a contract is deemed of the essence of the contract, (*Tyler* v. *Young,* 2 Scam. 444,) but courts of equity frequently relieve a party from the consequences resulting at law from his failure to perform his contract at the time specified therein for performance, where time is not of the essence of the contract, where enforcement of the strict rules of law would result in a forfeiture of money paid or property delivered under the contract, or would otherwise be inequitable and against good conscience; but in such cases a reasonable excuse for the non-performance at the time fixed for performance must be shown in order to warrant a court of equity in compelling specific performance on behalf of the delinquent party; (*Scott* v. *Shepherd,* 3 Gilm. 483; *Stow* v. *Russell,* 36 Ill. 18; *Warren* v. *Richmond,* 53 id. 52; *Snyder* v. *Spaulding,* 57 id. 480; *Brink* v. *Steadman,* 70 id. 241;) and where a party has neither paid anything under the contract nor obligated himself to pay anything in case of default on his part, and is in no worse condition on account of the termination of the contract than before it was made, and offers no sufficient excuse for his default, no ground exists to warrant equitable interference or relief from the consequences resulting at law from his failure to perform the contract at the time fixed for performance. Appellant has paid nothing under the contract and is under no obligation to pay anything because of her default. She is situated precisely as though no contract had ever been made, and the only excuse offered by her for her failure to

perform the contract on the day specified is, that Wood had failed to furnish an abstract of title to the parties who were to furnish the purchase money and that she was thereby prevented from performing her part of the contract. Wood had not agreed to furnish an abstract of title to the appellant, or to anyone for her, prior to the delivery of the deed and payment of the purchase money, and neither he nor appellees were under any obligation to do so. This excuse was wholly insufficient and furnished no justification for the failure of appellant to perform the contract at the time fixed for performance. The substance of the excuse is that appellant did not have the purchase money and had not been able to obtain the same at the time fixed for performance, but poverty is not a sufficient excuse for a failure to perform the contract according to its terms and provisions. (*Milnor* v. *Willard*, 34 Ill. 38.) As we said in the case last cited: "Lands in this country are an article of commerce, and parties making contracts for their sale rely upon the obligations of purchasers as a means by which they are enabled to transact business. Promptitude in the discharge of such obligations is as essential as in other commercial transactions, and justice to the vendor requires that such obligations should be literally complied with, unless the stipulation in regard to time is waived or there is some just excuse for a non-compliance."

Nor has appellant brought herself within the rule that before she could obtain a decree for specific performance of the contract she was required to show that she had performed, or offered to perform, all conditions precedent imposed on her, and that she has always been ready, willing and eager to perform on her part. (*Bates* v. *Wheeler*, 1 Scam. 54; *Hoyt* v. *Tuxbury*, 70 Ill. 331; *Brix* v. *Ott*, 101 id. 70; *Morse* v. *Seibold*, 147 id. 318; *Forthman* v. *Deters*, 206 id. 159.) A purchaser of land has no right to apply to a court of chancery to compel a conveyance unless he has, previously to filing his bill, clothed himself with the right

to demand a deed without any further thing being done on his part. (*Cronk* v. *Trumble,* 66 Ill. 428.) The appellant neither paid nor tendered payment of the purchase money prior to filing her answer or cross-bill herein, and has never been ready to perform her part of the contract because she has not had the necessary money. She had not, prior to filing her answer or cross-bill, clothed herself with the right to demand a deed without any further thing being done on her part.

For the reasons above stated, treating the cause as one in chancery, the evidence fails to establish any defense to the petition for partition or any right on the part of Margaret A. Sheffer to a decree for specific performance of the alleged contract. It is therefore unnecessary, in view of appellant's contention in this court, to consider the question whether the action of the circuit court in finally considering the cause as one in chancery related back to the time when the demurrer to the cross-bill was sustained and rendered the action of the court thereon erroneous.

The decree of the circuit court will be affirmed.

*Decree affirmed.*