## Joseph B. Strauss, Appellant, v. Fred G. Borg, Appellee.

### Gen. No. 17,067.

1. CONTRACTS—*words and phrases.* The word "hereafter" when used in a contract providing that all plans and patents, relating to a certain type of bridge construction and miscellaneous office work conceived of by either party "preceding this contract or hereafter, shall belong exclusively to the party of the first part," refers only to the time the contract is in existence.

2. CONTRACTS—*construction.* The fact that complainant, who drew up the contract sued on, is ignorant of the legal meaning of words, does not aid him in his contention that the word "hereafter" as used therein should be construed to mean "forever."

3. SPECIFIC PERFORMANCE—*when complainant not entitled to.* A complainant who seeks to have a patent assigned to him on the ground that the defendant is bound by a contract entered into while in the complainant's employ, does not show that he has performed or offered to, and has always been ready to perform, where the defendant was obliged to sue for his salary due under the contract and to follow successive appeals to the Supreme Court.

4. PATENTS—*adjudication in interference proceeding.* A decision in interference proceedings as to the priority of invention is, it seems, not a bar to an action to determine the ownership of the patent under a contract affecting all future inventions of the inventor.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

KREMER & GREENFIELD, for appellant; JAMES A. BRADY, of counsel.

JAMES W. TAYLOR, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is a bill in the nature of a bill for specific performance of a written contract, filed August 5, 1908, by Joseph B. Strauss, appellant and hereinafter referred to as complainant, against Fred G. Borg, ap-

pellee and hereinafter referred to as defendant. The prayer of the bill was to the effect that upon the hearing a certain letters-patent of the United States, No. 828,873, for improvements in "bridges," issued to defendant on August 21, 1906, be decreed to belong to complainant and that defendant be ordered to make an assignment of the same to complainant, that an accounting be had to ascertain the amount of royalties received by defendant from the sale of designs under said patent, and, if upon said accounting it be found that any monies be due from complainant to defendant, that defendant be decreed to pay the same to complainant in excess of any sum found due to defendant, complainant offering to pay defendant such sum. The defendant filed an answer to the bill and to an amendment to the bill, and after evidence was heard in open court the bill was dismissed for want of equity and complainant appealed to this court.

Both parties are civil engineers. On September 15, 1903, letters-patent of the United States, No. 738,954, was granted to complainant for improvements in "bridges," upon application filed December 19, 1902. Sometime in the spring of the year 1903 complainant employed defendant to assist him in preparing designs and making calculations for proposed bridges. On October 15, 1903, the parties entered into a written agreement, for one year, wherein it was stipulated that complainant was "the inventor and designer of an improved bascule bridge, an improved viaduct and other improvements, and the owner of letters-patent thereon," and that defendant was to work for complainant as an assistant engineer in charge of the office and of such engineering work as complainant would carry on from time to time, but defendant was to receive no compensation for his services until complainant should obtain a satisfactory contract or contracts for the design and erection of one or more of his bridges or elevated structures, and when such contract

had been obtained complainant agreed to pay defendant $140 per month, dating from May 1, 1903, to the time when such contract was obtained, and in addition thereto five per cent. of the net earnings on such contract and on any other contracts received for bascule bridges, and also on contracts for general engineering work done in the office. The agreement also contained the following provision: "It is hereby agreed and understood that all designs for said bascule bridge, viaducts, etc., and all improvements thereon, have been made by the party of the first part (complainant), and the second party (defendant) has no claim whatever on said designs and improvements, except as herein set forth, and all plans, designs, patents, etc., relating to said bascule bridge, viaduct and miscellaneous office work conceived or executed by either party, preceding this contract, or *hereafter,* belong exclusively to the party of the first part."

Defendant remained in the service of complainant until June 15, 1905, during which time he did considerable work in preparing drawings for bridges and other structures for complainant, who was endeavoring to obtain contracts. No other written agreement was entered into between the parties during said period of service or afterwards. Defendant testified that after October 15, 1904, he had a conversation with complainant as to his future compensation and that the latter verbally agreed to pay him at the rate of $150 per month. Complainant denied this and testified that it was agreed that defendant was to continue to work for complainant on the old basis. About May 16, 1905, defendant asked for a payment of the back salary due him, and, according to defendant's testimony, complainant at that time wrote and delivered to defendant a memorandum which, as defendant claims, showed that $1,662 was due defendant up to May 1, 1905. Shortly before defendant left complainant's employ, a conversation was had in which defendant asked for a further

increase in salary.  Complainant testified as to this conversation: "I told him I could not do so, and then he said he planned to go into business for himself; * * * I said that would be satisfactory to me, and that I would be glad to help him along, * * * and I did that afterwards."  Complainant further testified: "He opened an office on the floor below, and I turned over to him there certain uncompleted jobs and made an arrangement to pay him on the hour basis, and gave him certain other pieces of work, * * * which he executed there. * * * This continued all through that summer and into the fall."  In December, 1905, defendant again asked complainant for a settlement of the back salary due him and for work done subsequently to June 15, 1905.  Complainant made a payment on account, and subsequently told defendant he did not owe him anything.  In February, 1908, defendant brought suit against complainant in the Municipal Court of Chicago, and recovered a judgment of $1,151.90.  On appeal this judgment was affirmed by this court.  Borg v. Strauss, 153 Ill. App. 450.  The Supreme Court granted a writ of *certiorari*, and subsequently, on December 21, 1910, affirmed the judgment (247 Ill. 462).

About six months after defendant left complainant's office, complainant, on December 18, 1905, made application for letters-patent of the United States for improvements in bridges, which application was still pending at the time of the filing of this bill.  On February 6, 1906, defendant filed an application for letters-patent for improvements in bridges, which was allowed on August 21, 1906, and a letters-patent was issued thereon to defendant.  This is the patent which complainant seeks by this bill to have the court decree an assignment of to complainant as being rightfully his property.  It is stated by counsel for complainant in their brief and argument filed in this court that,

"The particular type of bridge designed by the complainant and covered by his patent, is what is known

as the trunnion type and derives its name from the fact that it moves upon a fixed axis or shaft called a trunnion, and moves upon this trunnion in very much the same manner as a wheel of a vehicle moves on its axle. The structure rests upon a pier or foundation on the bank and the bridge consists of a span called a leaf, which projects out across the channel, and this leaf is movable and can be raised for the passage of vessels, and in this movement swings upon the trunnion referred to. * * * The patent issued to the defendant * * * contains three principal features, viz:—

(a) An overhead counterweight,

(b) Supports entirely outside of the trusses, i. e., the foundation on which the structure rests consists of two pedestals, one on either side of the structure, neither one of which projects underneath the structure, or any part of it; and

(c) The counterweight supported by what is termed a *compound lever.*"

When complainant discovered that a patent had been issued to defendant, complainant filed an interference in the Patent Office, at Washington, D. C., which was heard and decided adversely to him. On appeal before the Examiners-in-Chief that decision, awarding priority of invention to defendant, was affirmed on November 30, 1908. From this decision of affirmance, which was introduced in evidence during the hearing of this case, it appears that said Examiners-in-Chief found:

"Borg's application, though filed later than Strauss', went to patent containing the claims that constitute the issue, and Strauss adopted the claims in his application; therefore what the invention is must be ascertained from the patent, and Strauss' right to claim it depends upon whether the invention disclosed in his application is substantially the same as that particularly pointed out in the three claims taken from the Borg patent.

We do not find a *compound lever* in the invention disclosed in Strauss' application prior to September 26, 1906, the latter being the date of filing of an

amendment containing Strauss' claims constituting the counts."

It does not appear that any appeal was taken from this decision of said Examiners-in-Chief.

The original bill charged, substantially, that the improvements set forth in the letters-patent issued to defendant had been developed by the complainant in the regular course of his business, while defendant was so employed by him, and as an outgrowth of complainant's efforts to make further improvements in bridges beyond those covered by his patent, No. 738,954, and that by reason of the provision in the contract of October 15, 1903, above quoted, the said improvements mentioned in defendant's patent rightfully belonged to complainant; that complainant had himself intended to make application for letters-patent upon the improvements contained in defendant's patent, and subsequently did file an application for a patent therefor on December 18, 1905; that the specifications in the application filed by complainant "covered all the principal features in the improvements specified in said letters-patent issued to defendant,   *   *   *   and each and every one of the improvements   *   *   * were conceived and invented" by complainant while defendant was engaged in the office of complainant. By amendment to the bill the complainant charged, substantially, that the letters-patent issued to defendant represented a plan and design of a bascule bridge relating to the bridge described in the letters-patent No. 738,954 issued to complainant on September 15, 1903, and that under the provision in said contract, above quoted, complainant is the rightful owner of defendant's patent and entitled to an assignment thereof, "whether said improvements mentioned therein were conceived and invented by complainant, or whether the same were conceived and invented by defendant." The defendant denied all of the allegations of the bill and amended bill, material to the present controversy, and

set forth the decision of said Examiners-in-Chief as a bar to the relief prayed by complainant.

Upon the hearing, complainant offered in evidence the two patents, the contract, the various general drawings, computations, etc., of proposed bridges which had been executed in complainant's office and under his direction by defendant, and produced expert witnesses who testified that in their opinion the said patent issued to the defendant related to the bridge covered by complainant's patent and in what respects. The defendant's evidence tended to show that during the existence of the written agreement in question none of the principal features so specified in his patent had come to his knowledge; that he first conceived the counterweight, compound lever and the trunnions, as he had them in his patent, shortly after he left the employ of complainant; and that there were material differences between the two patents, and between defendant's patent and certain drawings for bridges either seen or made by defendant while in complainant's employ.

The trial court found in the decree that the bill was in the nature of a bill for specific performance; that defendant commenced suit against complainant under said contract of October 15, 1903, which is the basis of the bill herein, and obtained judgment, which judgment was affirmed by the Appellate Court; that the use of the word ''hereafter'' (found in the clause in said contract on which this bill is based) is to be construed as having reference only, so far as its validity is concerned, to the time that the contract was in existence between the parties; that by the terms of said contract it was to last one year from the date thereof; that from a consideration of all the drawings and plans presented at the trial, and in the light of the expert patent attorney's evidence, it was not established by a preponderance of the evidence that the patent, which was issued to defendant, was conceived by him while

he was working for complainant; that complainant has not made out such a case as would justify a decree holding that said patent is the property of complainant, and that, therefore, it is decreed that complainant's bill be dismissed for want of equity.

One of the contentions of counsel for complainant is that the decision in the interference proceeding in the Patent Office does not in any way affect the right of complainant to sustain his bill. To this counsel for defendant replies that "where the question decided in the Patent Office is one between contesting parties as to the priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction." Morgan v. Daniels, 153 U. S. 120, 125; Hillard v. Remington Co., 108 C. C. A. 534; Greenwood v. Dover, 194 Fed. 91, 92. The chancellor in the decree in this case made no reference to the decision of said Examiners-in-Chief in the interference proceeding, but found that "it was not established by a preponderance of the evidence that the patent, which was issued to the defendant, Borg, was conceived by him while he was working for said complainant" and that "complainant has not made out such a case as would justify a decree * * * holding that said patent is the property of the complainant." In view of all of the evidence in this case we are of the opinion that said findings were fully warranted.

Counsel for complainant also urge as a ground of reversal that the chancellor erred in his construction of the word "hereafter," used in the above quoted paragraph of said agreement of October 15, 1903, between the parties, and argue that such word should be so construed as to entitle the complainant to claim the ownership of all plans, designs, patents, etc., relating to the bascule bridge, conceived or executed by

defendant at any time after the expiration of the one year period mentioned in the agreement, as well as during that period. We cannot agree with counsel.

In Dobbins v. Cragin & Co., 50 N. J. Eq. 640, Dobbins was engaged in the manufacture of soap and boot-polish. By written agreements he sold the use of his name and all interest in his plant to Cragin & Co., for a term of twenty years. Dobbins gave a receipt for part of the purchase price in which, above his signature thereto, were the words, "As a part of the foregoing agreement, the said Dobbins also hereby covenants and agrees with the said Cragin & Co. that they may use his name upon and as descriptive of any soap or blacking they may *hereafter* make, * * *." Dobbins, after the expiration of the twenty years, filed a bill to enjoin the further use of his name. The defendants contended that a perpetual right to the use of Dobbins' name had been conveyed, but the court said (p. 648):

"The defendants rely upon the word 'hereafter' in it (the receipt) as indicating a grant in perpetuity to defendants to use complainant's name upon any and all soaps and blackings the defendants may thereafter manufacture. Now, I think the word 'hereafter' used as an adverb does not necessarily refer to unlimited time. * * * It is not a synonym for 'forever.' It rather indicates the direction in time merely to which the context refers, and is limited by it. The duration of the word 'hereafter' is usually expressed by some other word, or is inferred from the context. In fact, the mind does not rest satisfied with the use of the word 'hereafter' in such case, but naturally inquires, and expects to hear in addition, how long the *hereafter* is to last."

In Hildreth v. Thibodeau, 117 Fed. 146, a bill was filed in the U. S. Circuit Court for the district of Massachusetts, by Hildreth for specific performance of a written agreement wherein it was stated that Hildreth, a candy manufacturer, was desirous of having perfected and manufactured a certain machine or

machines for use in the manufacture of candy; that
Thibodeau was a skilled mechanic and desirous of en-
tering Hildreth's employ for the purpose of perfect-
ing such machinery; that Thibodeau, in consideration
of such employment and the payment of certain therein
specified daily wages, agreed to give Hildreth his best
services and "the full benefit and enjoyment of any
and all inventions or improvements which I have made
or may *hereafter* make relating to machines or devices
pertaining to said Hildreth's business." It appeared
from the bill and the evidence in the case that com-
plainant was notified by the Patent Office that another
asked to have assigned to him under said contract;
that while defendant was in complainant's employ he
worked upon a machine owned by complainant, upon
which machine complainant applied for letters-patent
of the United States, which application was subse-
quently allowed, and was about to issue, when com-
plainant was notified by the patent office that another
application for the same subject matter had been filed
and an interference declared, which interference ques-
tion had not been decided at the time of the filing of
the bill, and that said other application for letters-
patent had been filed by defendant. Defendant filed
a cross-bill asking that the agreement be adjudged
invalid and that it be delivered into court and can-
celled, because it belonged to that class of unconscion-
able contracts which a court of equity will not enforce.
The Circuit Court dismissed both bill and cross-bill
because the bill had been prematurely brought, and
for the reasons that the bill sought to have the court
determine the question of priority of invention, that
that question was now properly before the patent
office for adjudication, that if it should be there de-
termined that complainant was the prior inventor, this
bill would fall because there would be nothing to as-
sign under said contract, and that if it should be de-
termined that defendant was the prior inventor it

would then be time for complainant to ask for specific performance under the contract. The case was appealed to the Circuit Court of Appeals, first circuit (124 Fed. 892), where the decree was affirmed, the court saying (p. 893):

"Reasonably interpreted, the contract provided that Hildreth should take the benefit and enjoyment of all those inventions and improvements relating to machines used in Hildreth's business which Thibodeau might make while employed by Hildreth. The employment might be ended at any time, either by Hildreth or by Thibodeau, and inventions *thereafter* made by Thibodeau *would belong to him, and would not be covered by the contract.* * * * This contract is neither unconscionable nor against public policy."

We have examined the cases cited by counsel for complainant which they say support their contention as to the construction to be given to. the word "hereafter" in the contract before us in this case, Joliet Co. v. Dice, 105 Ill. 649; Bates Co. v. Bates, 192 Ill. 138; Hulse v. Bonsack Co., 13 C. C. A. 180; Mississippi Glass Co. v. Franzen, 74 C. C. A. 135, and other cases, and are of the opinion that they are not applicable to the facts in this case.

Counsel for complainant also urge in their reply brief that complainant wrote out the agreement in question and submitted it to defendant for his signature, that he was unskilled in the preparation of legal documents and was a layman ignorant of the legal meaning of words, etc., and, therefore, these facts should be considered in determining the construction to be given to the word "hereafter." This argument does not assist complainant, because, "if a contract contains ambiguous words, or words of doubtful meaning, such are to be construed most strongly against the party who executed the contract." Massie v. Belford, 68 Ill. 290; McClenathan v. Davis, 243 Ill. 87.

Furthermore, in view of the action taken by com-

plainant, as above shown, in refusing to pay defendant money due him on said contract for salary, etc., for which defendant was obliged to bring suit and, after judgment obtained, to follow successive appeals to this and the Supreme Court, we do not think that complainant has brought himself within the rule that, before he can obtain a decree for specific performance of the contract, he must show that he has performed, or offered to perform, and has "always been ready, willing and eager to perform" his part of the contract. Wood v. Sheffer, 248 Ill. 617, 631.

The decree of the Circuit Court of Cook county is affirmed.

*Affirmed.*