**VELSICOL CORP. v. HYMAN.**

Civ. No. 3369.

United States District Court
D. Colorado.

Dec. 6, 1951.

As Modified on Rehearing

March 11, 1952.

Johnston, Thompson, Raymond & Mayer, Chicago, Ill., and John R. Coen, Denver, Colo., for plaintiff.

Adams, Forward & McLean, New York City and Lewis, Grant, Newton, Davis & Henry, Denver, Colo., for defendant.

KNOUS, District Judge.

This is an action to obtain equitable relief. The plaintiff prays that it be adjudicated the owner of the formulas, processes and products embodied in certain patent applications listed in the complaint; that the defendant be ordered to assign these applications and all his interests therein to the plaintiff; that the defendant be required to disclose to the plaintiff all other discoveries and inventions which the former may have made while in the employment of the latter and that he assign his interests therein to the plaintiff; and that the defendant be restrained from using or revealing to strangers any of these formulas, processes, products, patents and patent applications.

After the defendant had answered, the plaintiff filed a motion for summary judgment which is now under consideration.

The following are the pertinent admitted facts of the case:

1. This Court has jurisdiction to litigate the issues.

2. The plaintiff was organized in Illinois in 1931 to develop, produce and market chemical products.

3. The defendant was a director and vice-president of the plaintiff from the time of its organization until his resignation, September 13, 1946.

4. The defendant was director of research and general manager of the plaintiff from the time of its organization until his resignation September 13, 1946.

5. Many discoveries were made in plaintiff's laboratories since its organization. The inventors always assigned all patent applications for these discoveries to the plaintiff.

6. In July, 1945, a dispute arose between the parties concerning the right of the plaintiff to have assigned to it a patent application filed by the defendant.

7. The Superior Court of Cook County, Illinois, found that the defendant had executed and delivered to the plaintiff an agreement which is set forth on pages 2 and 3 of the amended complaint. The Supreme Court of Illinois affirmed this finding.

8. In 1944, valuable discoveries were made in the plaintiff's laboratories. Drs. Herzfeld and Lidov and Mr. Bluestone filed patent applications on these discoveries as co-inventors, on March 5, 1945, under Serial No. 581,172 and on January 5, 1946, under Serial No. 639,416.

9. The above applications were assigned to the plaintiff and the assignments recorded in the U. S. Patent Office.

10. The defendant filed the following patent applications as inventor:

On July 25, 1945, Application under Serial No. 607,078;

On January 26, 1946, Application under Serial No. 643,759;

On February 16, 1946, Applications under Serial Nos. 648,204 and 648,205.

Corresponding foreign patent applications were also filed by the defendant as inventor.

The defendant claimed to be the owner of the processes covered by these applications.

11. The plaintiff brought suit in Illinois to have the defendant assign the above patent applications to it.

12. The plaintiff won that suit.

13. The Supreme Court of Illinois affirmed the judgment.

14. The opinion of the Supreme Court of Illinois is by reference a part of the complaint in the present case.

15. On October 14, 1946, the defendant filed as inventor patent applications Nos. 703,101 and 703,102.

These applications cover the same inventions as the Herzfeld, Lidov, Bluestone applications Nos. 639,416 and 581,172.

All four of these applications are still pending in the U. S. Patent Office and interferences have been set up by reason of the conflicting claims.

16. The Hyman applications Nos. 703,-101 and 703,102 (see paragraph 15) cover discoveries made in plaintiff's laboratories while the defendant was general manager of the plaintiff and while Herzfeld, Lidov and Bluestone were employed as research chemists by the plaintiff.

17. The plaintiff has demanded that the defendant assign applications Nos. 703,101 and 703,102 to it, and the defendant has refused to make the assignment.

18. The defendant left the employment of the plaintiff on September 13, 1946, and later organized Julius Hyman and Company which produces insecticides under management of the defendant, near Denver, Colorado.

19. Lidov, Bluestone and Segel worked as research chemists for the plaintiff under the supervision of the defendant prior to September, 1946.

20. Later they left the plaintiff's employment and went to work for Julius Hyman and Company.

21. Lidov, Bluestone, Herzfeld and the defendant filed patent application No. 764,-002 as co-inventors on July 26, 1947. Lidov, Bluestone and Herzfeld assigned this application to the plaintiff, but the defendant has refused to do so. The application is still pending in the patent office.

22. In December, 1947, Lidov, Segel and the defendant filed patent application No. 794,204 as co-inventors. Lidov and Segel assigned this application to the plaintiff, but the defendant has refused to do so. The application is still pending.

23. In August, 1948, Lidov, Segel and the defendant filed patent application No. 43,153 as co-inventors. Lidov and Segel assigned this application to the plaintiff, but the defendant has refused to do so. The application is still pending in the patent office.

24. The discoveries covered by applications Nos. 764,002, 794,204 and 43,153 (paragraphs 22, 23 and 24) were made in the laboratories of the plaintiff while Herzfeld, Lidov and Segel were research chemists there and under the general direction of the defendant. The plaintiff has unsuccessfully demanded that the defendant assign the applications to it.

25. Late in 1944 the defendant, as general manager of the plaintiff, assigned Kleinman to the problem of finding methods of production of certain organic sulphur compounds.

26. Kleinman was employed by the plaintiff as a research chemist.

27. In December, 1946, Kleinman filed patent applications Nos. 717,597 and 717,-598 and assigned the applications to the plaintiff.

28. In November, 1946, the defendant filed patent application 707,337 as the first inventor of the discoveries covered by the Kleinman applications. (paragraph 27)

29. The defendant has refused to assign application No. 707,337 to the plaintiff.

30. All the applications mentioned in paragraphs 25 through 29 are still pending in the patent office.

31. Application 707,337 (paragraph 29) was based on discoveries made in the plaintiff's laboratories and while Kleinman was employed by the plaintiff as a research chemist under the general direction of the defendant.

The defendant has thus admitted that the discoveries or inventions covered by every one of the patent applications which are the subject matter of this suit were made in the laboratories of the plaintiff at a time when the defendant was general manager and director of research of the plaintiff.

The relationship of the parties herein during the employment of Julius Hyman by Velsicol Corporation and the duties and obligations which Hyman bore to the latter have been finally adjudicated on two prior occasions. Velsicol Corporation v. Hyman, 405 Ill. 352, 90 N.E.2d 717; Julius Hyman & Co. et al. v. Velsicol Corporation, 123 Colo. 563, 233 P.2d 977; certiorari denied 72 S.Ct. 113, petition for rehearing denied 72 S.Ct. 199. These cases leave no doubt that all of the discoveries, inventions and processes which were developed or invented by Julius Hyman while in the employment of the plaintiff and any applications for letters patent which may have been filed thereon are the property of Velsicol Corporation.

■ This Court is bound by these decisions under the rules of res judicata and, in the case of the decision of the highest Court of Colorado, under the doctrine established in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 as well. See Restatement of Judgments, §§ 68-70. If, therefore, the admitted matters alone are considered, there appears no genuine issue as to any material fact to preclude the summary relief the plaintiff has urged in his motion.

■ However, Hyman has pleaded certain affirmative defenses. If any of these raise matters which, if proven might possibly preclude a judgment and decree in favor of the plaintiff as a matter of law, then the motion for summary judgment must be denied. Rule 56 Fed.Rules Civ. Proc., 28 U.S.C.A.

■ One of these affirmative defenses urges that the causes of action set forth in the present complaint could have been joined in the prior suit between the parties in Illinois and that the plaintiff's failure to litigate them in that suit precludes him from doing so now. In other words, it is urged that where several similar wrongful acts are perpetrated by one party

against another under identical circumstances, they must all be litigated in one action, if that is possible, or be forever barred. This contention fails to distinguish between splitting a single cause of action and failing to join several causes of action in one proceeding. The former is not permissible. The latter is the privilege of the wronged party and has never been condemned. United States v. Pan American Petroleum Co., 9 Cir., 55 F.2d 753, 776; New York Life Ins. Co. v. Graham, 9 Cir., 92 F.2d 377; Hospelhorn v. Circle City Coal Co., 6 Cir., 117 F.2d 166.

■ Of course, each time Hyman made a new discovery while in the employment of the plaintiff and appropriated the same to his own use or refused to assign applications for letters patent thereon to the plaintiff, a new, separate and distinct wrongful act occurred and an individual cause of action accrued. Restatement of Judgments, § 61, comment c. Each application for letters patent here in suit constitutes a different subject matter for the misappropriation of which a separate action might have been maintained. The defendant seems to be aware of this for his defense is not based on and does not allege the splitting of a single cause of action but states that there was a failure to join all existing causes of action which might have been joined in the Illinois proceeding. This cannot be countenanced as a valid defense and will not preclude the entry of a summary judgment if it is otherwise called for.

Another of the affirmative defenses seeks to invoke the historic prohibition of equity to grant relief to one whose hands are unclean with respect to the particular transaction before the court. The facts which the defendant has pleaded as constituting "unclean hands" need not be repeated here. They are fully set forth in a third suit between these same parties to which no reference has so far been made. In Hyman v. Velsicol Corp. et al., 342 Ill.App. 489, 97 N.E.2d 122, the defendant in the case at bar unsuccessfully sought to enjoin Velsicol Corporation from taking and continuing the very actions which he now

pleads in defense under the unclean hands doctrine. The Illinois Appellate Court found that the equities were with Velsicol Corporation and denied relief.

■ The identical defense was also urged in the Colorado case previously referred to. Julius Hyman & Co. et al. v. Velsicol Corporation, 123 Colo. 563, 233 P. 2d 977, 990, 1003. The subject matter of that action was different discoveries and different patent application than those involved in this suit and damages were sought and obtained in addition to equitable relief. All other pertinent circumstances were the same as in the present case. The Supreme Court of Colorado held the defense unworthy of consideration and without merit. This Court is fully bound by that adjudication. The affirmative defense of unclean hands, therefore, does not bar the entry of a summary judgment as prayed for.

■ A third affirmative defense goes to only three of the applications for letters patent involved in this proceeding. It concerns applications Nos. 703,101–703,102 and 707,337. The defendant has pleaded that these applications are at the present time the subject of an interference proceeding in the United States Patent Office. He urges that if the patent office determines that he was not the first inventor of the processes or discoveries which these applications cover, then he will have no perceptive rights to them which can be assigned and that thereupon this suit will become moot with respect to those particular applications. Hildreth v. Thibodeau, C.C., 117 F. 146, supports this contention. That case held that where a patent application is involved in an undetermined interference proceeding, a court of equity will not enter a decree compelling the assignment of such an application because such a decree might become utterly useless. The court held that a bill in equity which seeks such relief is premature under the circumstances. Equity does not compel the doing of a useless act, and it will not decree specific performance of a contract to dispose of property which the defendant does not own and to which he has no title. Kennedy v. Hazelton, 128 U.S. 667, 9

S.Ct. 202, 32 L.Ed. 576; Ryan v. Martin, C.C., 165 F. 765, 771; Chemical Foundation, Inc. v. General Aniline Works, Inc., 3 Cir., 99 F.2d 276.

■ The case in bar is purely an equitable proceeding. The relief sought is entirely in personam. It includes a prayer for specific performance concerning applications for letters patent Nos. 703,101, 703,102 and 707,337. Irrespective whether the plaintiff may ultimately become entitled to such relief by virtue of contract or as a result of fiduciary relationship between the parties, this Court properly may not enter a decree nor permit further proceedings in this action with respect to these three disputed applications until the interference proceeding in the patent office has been finally concluded. The case will, therefore, abate with respect to applications for letters patent Nos. 703,101–703,102 and 707,337 and the inventions and processes covered thereby until the patent office has ruled.

■ No further defenses are urged and there are no material matters of disputed fact to preclude the entry of a decree in favor of the plaintiff concerning the remaining applications for letters patent (Nos. 764,002–794,204 and 43,153) and the processes and inventions they cover. Under Rule 56, F.R.C.P., a summary judgment may be entered for part of the relief demanded and the action be pursued on the remaining issues.

■ It Is, Therefore, Ordered, Adjudged and Decreed that the motion of the plaintiff for summary judgment be and the same is hereby sustained with respect to these applications for letters patent and inventions and processes which are not now subject to interference proceedings in the United States Patent Office.

It Is Further Ordered that the motion be and the same herewith is denied without prejudice, as to these applications and processes and inventions which now are the subject matter of interference proceedings in the United States Patent Office and that this action abate until these interference proceedings are finally concluded.

Counsel for plaintiff will prepare and present an order and decree in accord with this opinion. Copies thereof shall be furnished counsel for defendants and the order and judgment settled on notice.

## On Rehearing

Following the filing of Memorandum Opinion in this matter on December 6, 1951, the plaintiff moved that the Court reconsider its ruling to the effect that further proceedings in this action with respect to applications for letters patent numbers 703,-101–703,102 and 707,337 should abate until interference proceedings now pending before the United States patent office should be concluded. Both parties have submitted briefs on the merits of this question.

■ The previous opinion, to which this memorandum will be appended, made it clear that irrespective of the decision of the patent office, plaintiff, in view of earlier adjudication between the parties, ultimately would become entitled to all proprietary rights in the disputed applications. Velsicol Corporation v. Hyman, 405 Ill. 352, 90 N.E. 2d 717; Julius Hyman & Co. et al. v. Velsicol Corporation, 123 Colo. 563, 233 P.2d 977. However, such previous opinion further directed the abatement of the proceedings at bar as to the above designated patent applications until the pending interference proceedings thereon were resolved by the patent office, upon the basis that until such was done there would be no res upon which the assignments prayed for by plaintiff could operate. This ruling was made on the authority of Hildreth v. Thibodeau, C. C., 117 F. 146, which squarely so determined. When that case was decided by the then Federal Circuit Court of Massachusetts, in 1902, the Patent Act did not confer upon applications for letters patent the dignity of a property right assignable in equity under a decree for specific performance. R.S. § 4898, Mar. 3, 1897, c. 391, § 5, 29 Stat. 693, 35 U.S.C.A. § 47. However, it now appears, which matter was not called to the Court's attention in the original presentation, that the Congress, in 1941, by amendment to section 4898, supra, made patent applications as

readily assignable as fully matured and choate patents. 35 U.S.C.A. § 47. Thus, the ground for the decision in Hildreth v. Thibodeau, supra, accepted as the basis for the abatement order herein, has been obliterated and removed by legislative processes.

Accordingly, the Memorandum Opinion of December 6, 1951, shall be considered as being so modified and in lieu of the order therein contained the following order shall be substituted and made, to wit:

It Is Ordered, Adjudged and Decreed that the motion of the plaintiff for summary judgment be and the same is hereby sustained. Counsel for plaintiff will prepare and present an order and decree in accord with the opinion of the Court as hereinabove amended and modified. Copies should be furnished to counsel for defendant and the order and judgment should be settled on notice unless the same shall be stipulated to in writing.