Ernest Glenn WINBOURNE, Jr., Individually, and as the Admr. of the Estate of Paule Charlotte Adamante, Wife of Ernest Glenn Winbourne, Jr., Paule Aime Winbourne, and Christine Jacqueline Winbourne, Plaintiff–Appellee,

v.

EASTERN AIR LINES, INC., Defendant–Appellant, and Fifteen Consolidated Cases.

No. 439, Docket 79–6156.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1979.

Decided Oct. 6, 1980.

Melvin I. Friedman, Milton G. Sincoff, Kreindler & Kreindler, New York City, for plaintiffs–appellees, O'Rourke and Gabay.

Chauncey E. Wilowski, Jamaica, N. Y., for plaintiff–appellee, O'Rourke.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiffs–appellees, Bright and Hickey.

Jobe & Gurley, New Orleans, La., for plaintiffs–appellees, Winbourne and Domangue.

Healey & Farrell, Washington, D. C., for plaintiff–appellee, Mahfoud.

Geoghan & Tutrone, New York City, for the Hansen plaintiffs–appellees.

Phillips & Cappiello, New York City, for plaintiff–appellee, Cappiello.

Frank H. Granito, Jr., New York City, Co–Liaison and Trial Counsel.

Walter E. Rutherford, Alan D. Reitzfeld, Haight, Gardner, Poor & Havens, New York City, for defendant–appellant, Eastern Air Lines, Inc.

Before WATERMAN, MOORE and MANSFIELD, Circuit Judges.

WATERMAN, Circuit Judge:

Eastern Air Lines, Inc. (Eastern), in a proceeding limited to the issue of liability only, appeals judgments entered against it in 16 cases in the United States District Court for the Eastern District of New York, Bramwell, J. The district court had granted motions for summary judgment and judgment on the pleadings, *Winbourne v. Eastern Air Lines, Inc.*, 479 F.Supp. 1130 (E.D.N.Y. 1979); and a request by Eastern for a 28 U.S.C. § 1292(b) certification to this court, permitting appeal before entry of final judgments, was granted. As to some of these judgments, Eastern contends that reversal is mandated because they were entered without compliance with the provisions of Rule 56(c) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). As to the remainder of these judgments, Eastern raises a more fundamental objection, an objection which is equally applicable to all the judgments entered in alleged violation of Fed.R.Civ.P. 56(c). Eastern maintains that because its pleadings asserted several affirmative defenses, which, if proved, would have precluded any of the named plaintiffs from obtaining a plaintiff's judgment, the District Court committed clear error when it granted plaintiffs' motions for entry of judgments against Eastern. For the reasons set forth below, we reverse the judgments entered against Eastern by the court below, and remand all sixteen cases to that court for further proceedings there.

We first set forth a detailed summary of the proceedings below, which we believe to be necessary for an adequate understanding of the extent of, and the reasons for, our rulings in these cases. The sixteen cases, all involving decedents who were foreign nationals, arise out of the crash of an Eastern aircraft at John F. Kennedy International Airport on June 24, 1975. As a result of this air crash disaster a number of actions were commenced against Eastern in different federal district courts throughout the country, all of which eventually were transferred by the Judicial Panel on Multi-district Litigation to the United States District Court for the Eastern District of New York for consolidated pre–trial proceedings pursuant to 28 U.S.C. § 1407(a). *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 407 F.Supp. 244 (Jud.Pan.Mult.Lit. 1976).

After completion of pre–trial discovery, the transferee court, pursuant to 28 U.S.C. § 1404(a), transferred to itself all sixteen actions, and ordered a trial against defendants Eastern and the United States of America to commence on September 11, 1978, limited to the liability of the defendants. On the date set for trial, the United States, although not admitting any negligence, announced that it would consent to the entry of liability judgments against it in all passenger cases. Accordingly, the district court severed the plaintiffs' cases against the United States, and on September 15, 1978, ordered the trial to go forward as to Eastern's liability for the crash.

Also on September 15, 1978, by notice of motion, Tierney A. O'Rourke, Public Administrator of Queens County, the plaintiff in eleven of the sixteen cases, the *Abbate*, *Alexandridis*, *Behar [Gabay]*, *E. Bigio*, *R. Bigio*, *Hadzis*, *P. Hansen*, *W. Hansen*, *Manias*, *Merkouris* and *Priniotakis* cases,[1] moved

---

1. The court below classified all sixteen cases according to whether a particular decedent was being represented by a single plaintiff or by multiple plaintiffs. The former group was termed the "non–disputed representative cases," and consisted of the *O'Rourke (Ab-*

*bate)*, *O'Rourke (Behar)*, *O'Rourke (E. Bigio)*, *O'Rourke (R. Bigio)*, *Bright*, *Domangue*, *Hickey*, *Mahfoud* and *Winbourne* actions; the latter group was termed the "disputed representative cases," and consisted of the *O'Rourke (Alexandridis)/Cappiello (Alexandridis)*, *O'Rourke*

for summary judgment and judgment on the pleadings based upon the contention that these cases were governed by the Warsaw Convention and Montreal Agreement (Warsaw/Montreal), and therefore these plaintiffs were entitled to a liability judgment as a matter of law.

Eastern, although not contesting that all of the above cited cases were controlled by Warsaw/Montreal, noted that it had pleaded as an affirmative defense in each of these cases that the plaintiff(s) lacked capacity to sue. Additionally, in all of the above cited cases except *Behar*, Eastern had also pleaded as an affirmative defense that each suit had been commenced without the proper authorization of the decedent's next of kin and personal representative. Finally, in all of the above cited cases, Eastern had pleaded the possible application of laws of diverse foreign jurisdictions.

Nevertheless, later that day, the district court granted plaintiffs' motions in the *Abbate, Behar, E. Bigio* and *R. Bigio* cases, without resolving the issues of fact raised by Eastern's affirmative defenses, and without affording Eastern an opportunity to submit written papers in opposition to the plaintiffs' motions. However, the district court denied plaintiffs' motions in the remaining seven cases on the ground that there were disputes between the named representatives and next of kin of the decedents as to the proper party to prosecute these actions.

On September 18, 1978, at the commencement of the liability trial against Eastern, the plaintiffs in the remaining cases, the non–disputed representative cases, made similar oral motions for summary judgment and judgment on the pleadings based on Warsaw/Montreal. Although Eastern interposed the same objections it had made to

the earlier motions, the district court granted plaintiffs' motions that same day. Eastern, interpreting certain language in the orders and judgments implementing the district court's decision in the non–disputed representative cases as a Fed.R.Civ.P. 54(b) certification, appealed to this Court. A consolidated appeal was docketed in this Court on November 13, 1978, under the caption of *Winbourne v. Eastern Air Lines, Inc.*, Docket No. 78–6178.

While the *Winbourne* appeal was pending before this Court, the district court consolidated the disputed representative cases for all purposes, again considered the plaintiffs' motions for summary judgment and for judgment on the pleadings in those cases, and granted these motions on December 1, 1978. On the same day, December 1, 1978, the district court issued a decision pertaining to the cases docketed under the *Winbourne* appeal, which provided that the alleged Rule 54(b) language should be deleted from the judgments entered in those cases because the insertion of this language had been a clerical error, and at the same time ordered the transfer of four cases, the *Bright, Domangue, Hickey* and *Winbourne* cases, to a Louisiana federal district court for damage trials.

On January 16, 1979, this Court granted a stay of the cases ordered transferred to Louisiana, but, finding ourselves to be without jurisdiction to review the entry of judgments in the non–disputed representative cases, suggested that Judge Bramwell consider the certification of these cases for appeal pursuant to 28 U.S.C. § 1292(b). Eastern thereafter applied to the district court for a 28 U.S.C. § 1292(b) certification of the judgments entered on September 28, 1978 (the non–disputed representative cases involved in the *Winbourne* appeal). And, as the judgments entered in the disputed rep-

---

(Hadzis)/Cappiello (Hadzis), O'Rourke (P. Hansen)/M. Hansen (P. Hansen), O'Rourke (W. Hansen)/K. Hansen (W. Hansen), O'Rourke (Manias)/Jennings (Manias), O'Rourke (Merkouris)/Jennings (Merkouris), and O'Rourke (Priniotakis)/Cappiello (Priniotakis) actions [surname of decedent in parentheses in those cases in which the Public Administrator of Queens County is a named plaintiff].

For the sake of brevity, we will adopt the lower court's shorthand terminology wherever possible in our discussion of these cases. We nevertheless recognize, of course, that in light of Eastern's challenges to the capacity and/or authorization of the nominal plaintiff(s) to commence suit, the status of the representatives in all of these cases is, in a very real sense, "disputed."

resentative cases on December 18 and 19, 1978 were premised on the same legal theory as the judgments in the *Winbourne* appeal cases, Eastern also sought 28 U.S.C. § 1292(b) certification of the judgments entered in the disputed representative cases as well.

On May 11, 1979, the district court issued a lengthy opinion in which it granted Eastern's request for 28 U.S.C. § 1292(b) certification of the judgments entered in both the disputed and non–disputed representative cases, recognizing that the manner in which the Warsaw/Montreal motions were instituted and granted presented a controlling question of law as to which there was substantial ground for difference of opinion. In addition to granting certification, the district court granted plaintiffs' motions to amend the terms of the judgments that had been entered in the non–disputed representative cases to make clear that Eastern retained its right to litigate its affirmative defenses to these actions.[2] The district court also ruled that the plaintiff Public Administrator in the *Abbate, Behar, E. Bigio* and *R. Bigio* suits had the capacity to sue as a matter of law, and further reaffirmed the granting of summary judgment and judgment on the pleadings in all of the cases herein. *Winbourne v. Eastern Air Lines, Inc.*, 479 F.Supp. 1130 (E.D.N.Y. 1979).

In a separate opinion entered on the same date, the district court vacated Eastern's deposition notices in the *Alexandridis, E. Bigio, R. Bigio, Hadzis, P. Hansen, W. Hansen, Manias, Merkouris* and *Priniotakis* cases by which Eastern sought additional discovery on matters relating to its pleaded defenses. Eastern thereupon petitioned this Court for permission to appeal all cases pursuant to 28 U.S.C. § 1292(b), and we granted Eastern leave to appeal on August 13, 1979.

### I. *The Non–Disputed Representative Cases*

At the outset, Eastern contends that the procedure followed by the district court in entering judgments in favor of the plaintiffs in the non–disputed representative cases, namely by recognizing, hearing and deciding plaintiffs' oral motions in open court all on the same day, violated the express terms of Fed.R.Civ.P. 56(c),[3] which provides that

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

---

2. Without deciding the issue, we may assume, for the purposes of this appeal, that it was within the authority of the court below first to proceed pursuant to Fed.R.Civ.P. 60(a) to delete the alleged Rule 54(b) language from the judgments it had entered in the non-disputed representative cases, and subsequently to grant plaintiffs' motions to amend the terms of these non–final judgments as permitted under Fed.R.Civ.P. 54(b). We need make no such assumption with reference to the judgments entered in the disputed representative cases, because those judgments contained language explicitly preserving Eastern's right to litigate its affirmative defenses.

3. Although the court below characterized its actions as granting plaintiffs' motions for sum-

mary judgment *and* for judgment on the pleadings, plaintiffs appear to concede that Rule 56 provides the appropriate standards to assess the entry of these judgments. Therefore, as this is by no means clear from the record, we must assume that the court below considered matters outside the pleadings in passing on plaintiffs' motions for judgment on the pleadings, thereby transforming these motions into motions for summary judgment governed by Rule 56. In any event, although Eastern's procedural objections to the entry of these judgments would be less forceful in the context of a Rule 12 motion for judgment on the pleadings, its substantive objections to the entry of these judgments, discussed in Section II *infra*, would retain their vitality in that context.

Temporarily putting to one side Eastern's substantive objections to the entry of these judgments against it,[4] we find that Eastern is entitled to a reversal of these judgments on purely procedural grounds. Initially, we perceive nothing in the language of Rule 56(c) that would suggest that the 10 day advance notice provision is a discretionary procedural mechanism to be heeded or ignored as the district court deems appropriate on any particular occasion. Moreover, the majority of the Circuits that have considered the effect of noncompliance with the advance notice provision of Rule 56(c) have held that such a procedural defect vitiates the entry of summary judgment against the non–moving party.[5] Although we are aware that some courts employ a type of "harmless error" analysis to mitigate the harshness of an inflexible rule requiring reversal in any case where the procedural requirements of Rule 56(c) have not been fully complied with,[6] reversal nevertheless would be warranted in the cases before us. As the transcript of the proceedings below clearly demonstrates, counsel for Eastern called the court's attention to the 10 day notice requirement of Rule 56(c) and requested the opportunity to submit papers in opposition to the plaintiffs' motions for judgment in these non–disputed representative cases. The district court's refusal to accede to Eastern's request that it be afforded the very due process protections specified in Rule 56(c) precludes a finding of "harmless error."

Finally, plaintiffs argue that whatever due process shortcomings accompanied the initial entry of judgments in their favor, their later motions to amend the terms of those judgments so as to insure that Eastern preserved its right to litigate its affirmative defenses afforded Eastern ample time and opportunity to advance in writing any objections Eastern might have had to the initial entry of those judgments. We, however, do not subscribe to the view advanced by plaintiffs, which in effect states that an initial deprivation of due process may be remedied by a belated grant of procedural protection at some later stage in the proceedings. As numerous courts have recognized, the purpose of the advance notice provision in Rule 56(c) is to permit the non–moving party a reasonable and meaningful opportunity to challenge the motion. *See, e. g., Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978); *Macklin v. Butler*, 553

---

4. *See* Section II, *infra.*

5. *See, e. g., Adams v. Campbell County School Dist.*, 483 F.2d 1351, 1353 (10th Cir. 1973) ("Noncompliance with the time provision of the rule deprives the court of authority to grant summary judgment."); *Alghanim v. Boeing Co.*, 477 F.2d 143, 148 (9th Cir. 1973) (Non-moving party "had an absolute right to file his own personal affidavit in opposition to the motion for summary judgment within the time provided by Rule 56. . . ."); *Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978) ("[T]he procedural requirements of Rule 56 are to be strictly adhered to."); *Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 719 (4th Cir. 1977).

6. *See, e. g., Ikerd v. Lapworth*, 435 F.2d 197, 203 (7th Cir. 1970) (affirming trial court's grant of defendant's motion for summary judgment 9 days after it was served on plaintiff where plaintiff neither called court's attention to the fact that Rule 56(c) afforded him an additional day to respond to the motion nor specified what additional material he would have introduced in opposition to the motion had he been granted the full 10 day period); *Oppenheimer*

*v. Morton Hotel Corp.*, 324 F.2d 766, 767–68 (6th Cir. 1963) (upholding grant of motion for summary judgment where trial court suggested that defendant make such a motion and granted the motion the same day it was made; plaintiff conceded that he had nothing to submit in opposition to the motion and did not request that he be afforded the 10 day period provided in Rule 56(c) prior to entry of judgment).

The prevailing view in this Circuit seems to be that, normally, adherence to the procedural requirements of Rule 56(c) is desirable. *See Herzog & Straus v. GRT Corp.*, 553 F.2d 789, 792 & n.5 (2d Cir. 1977). Although a harmless error analysis may be appropriate in some cases, it would appear that, at a minimum, the party against whom judgment is to be entered should be given an adequate opportunity to oppose the motion. *See id.* at 793 (Timbers, J., concurring specially). In these cases, of course, counsel for Eastern called the court's attention to the 10 day advance notice requirement of Rule 56(c) and also requested the opportunity to submit papers in opposition to the motions; the court, in turn, ignored counsel's observation and denied his request.

F.2d 525, 528 (7th Cir. 1977). Obviously, when such an opportunity follows, rather than precedes, the entry of judgment against the non–moving party, it cannot fairly be regarded as either reasonable or meaningful. In short, by the time of plaintiffs' motions to amend the terms of the judgments entered against Eastern in the non-disputed representative cases, the only curative measure, in order to comply with the procedural provisions of Rule 56(c), available to remedy the initial deprivation of due process, would be an order vacating those judgments without prejudice to the plaintiffs' right to renew their motions.

II. *The Disputed Representative Cases*

For purposes of this appeal, we may accept as correct the characterization advanced by the court below that "a claim by Eastern regarding these [disputed representative] cases that it has been denied procedural due process would be as infertile as trying to lay a lawn on a sidewalk." 479 F.Supp. at 1150. Thus, we will limit our discussion to Eastern's substantive objections to the entry of these judgments against it.

To state matters simply, Eastern's basic contention is that the court below, by entering judgments against Eastern when Eastern's pleaded affirmative defenses remained to be litigated, acted in a manner that was both legally incorrect and logically unnecessary. Eastern further characterizes the district court's action as an entry of "theoretical judgments" against Eastern. Although we find admirable the lower court's desire to remove uncontested issues from this unwieldy litigation, we perceive no persuasive reasoning that would justify the attainment of this laudable goal by employing the unorthodox means adopted, and so we must agree with Eastern that under the circumstances present here a reversal of the judgments entered against it in these cases is mandated.

We agree with Eastern that these judgments may be characterized as "theoretical". Although this characterization is applicable to the judgments entered in both the non–disputed and disputed representa-tive cases, it is most compelling in the latter group. Because more than one plaintiff has commenced suit on behalf of the same decedent in each of these cases, and because only one plaintiff in each case will ultimately prevail, it is clearly apparent that at least half of the "judgments" entered in favor of these plaintiffs never will be executed.

Moreover, Eastern rightly maintains that the entry of judgments against it in cases where it advanced the affirmative defenses of lack of capacity or the lack of authorization of particular plaintiffs to bring suit was legally incorrect, especially where the factual predicates of those affirmative defenses remain to be resolved. Numerous cases have established the proposition that a plaintiff's capacity to sue must first be resolved before a court may enter judgment in his favor. *See, e. g., Blackmar v. Lichtenstein,* 578 F.2d 1273, 1276 (8th Cir. 1978); *Brown v. Keller,* 274 F.2d 779, 780 (6th Cir.), *cert. denied,* 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960). Lack of authorization to bring suit, which would deprive a plaintiff of the requisite standing to maintain the action, likewise precludes a plaintiff from obtaining a judgment. The normal rule has been expressed succinctly elsewhere: "If any of these [affirmative defenses] raise matters which, if proven might possibly preclude a judgment and decree in favor of the plaintiff as a matter of law, then the motion for summary judgment must be denied." *Velsicol Corp. v. Hyman,* 103 F.Supp. 363, 366 (D.Colo.1952); *accord, Nemitz v. Norfolk & W. Ry.,* 287 F.Supp. 221, 231 (N.D.Ohio 1968). We find no compelling reason why this normal rule should not be applied here.

Finally, Eastern appropriately observes that the entry of judgments against it was not necessary to attain the result desired by plaintiffs. Eastern never has denied that, under Warsaw/Montreal, its liability to the *decedents,* as distinguished from the *plaintiffs,* is established irrefutably. Therefore, although plaintiffs are not entitled to judgments in their favor unless and until they have defeated the affirmative defenses raised by Eastern, the issue of Eastern's

liability to those among the present group of plaintiffs who eventually will avoid application of these affirmative defenses can and should be removed from further dispute. To accomplish this result Fed.R. Civ.P. 56(d)[7] seems precisely tailored, and we suggest that on remand plaintiffs in all of these cases make a proper motion to the district court to enter an order accomplishing the removal of Eastern's liability to the *decedents* (as distinguished from the particular plaintiffs) from the set of contested issues to be resolved at trial.

### III. *Other Matters*

#### A. *The Scope of the District Court's § 1292(b) Certification*

Plaintiffs contend that the court below, in certifying all of the cases involved in this appeal pursuant to 28 U.S.C. § 1292(b), intended the certification to cover only those matters surrounding the initiation and disposition of the motions for entry of judgments against Eastern. Eastern contends that the § 1292(b) certification of these cases is broad enough to encompass all matters which the district court resolved in the proceedings below. In view of our holding, requiring the reversal of all the liability judgments entered against Eastern, we need not determine what matters the court below intended to be covered by its § 1292(b) certification of these cases. Certainly the action we have taken regarding these cases necessarily will affect other matters, regardless of whether those matters are covered by the district court's certification order. Therefore, we consider it more productive simply to identify these matters and briefly to describe how our decision has affected them.

#### B. *The District Court's "Capacity to Sue" Rulings*

As we previously have noted, the district court, in the course of its opinion granting Eastern's request for 28 U.S.C. § 1292(b) certification of all liability judgments entered against Eastern, ruled that the plaintiff Public Administrator in the *Abbate, Behar, E. Bigio* and *R. Bigio* suits had the capacity to sue as a matter of law. 479 F.Supp. at 1150–54. With great reluctance,[8] we must recognize that our reversal of the entry of all liability judgments against Eastern mandates that, at least procedurally, all matters be returned to a pretrial posture. Otherwise, we would be placed in the anomalous position of recommending that the plaintiffs seek the entry of a Rule 56(d) order, which generally is conceded to be the equivalent of a pre–trial order entered under Fed.R.Civ.P. 16,[9] and have that order imposed in the context of a partially resolved ongoing litigation.

We wish to make clear, however, that our decision to return these matters to a pre–trial posture does not evidence a belief on our part that the efficient conduct of these proceedings should be sacrificed for the sake of procedural regularity. At this point in the litigation, Eastern has had ample opportunity to develop a specific factual basis for its asserted lack of capacity de-

---

7. Rule 56(d) provides
   (d) *Case Not Fully Adjudicated on Motion.* If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just.

   Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

8. Our reluctance does not stem from any belief that the lower court's rulings on the capacity issue were correct; this is a matter upon which we express no opinion. Rather, our reluctance reflects dismay at the prospect of nullifying a substantial amount of judicial time and effort because of an inadvertent misapplication of a mechanism designed to expedite the settlement of litigation.

9. *See, e. g., Audi Vision, Inc. v. RCA Mfg. Co.,* 136 F.2d 621, 625 (2d Cir. 1943).

fenses.[10] Moreover, in the four cases in which the lower court has ruled on the capacity to sue issue, Eastern has had the benefit of being made aware of the lower court's reasoning in some detail. For these reasons, we do not believe that the court below should be required to retrace all of its steps upon the remand of these proceedings. We would consider it both equitable and efficient for the court below on remand to instruct all parties concerned to identify any matters established in the previous proceedings that they find unacceptable, and to grant the parties a reasonable time to prepare written briefs detailing the grounds for their objections and the legal authority in support of their positions. Hopefully, therefore, relitigation of these cases may be limited to those matters that truly are in dispute.

### C. Eastern's Request for Additional Discovery

We are somewhat mystified by Eastern's characterization of the lower court's ruling vacating Eastern's deposition notices in several cases.

At page 46 of its appellate brief, Eastern states "Eastern was therefore effectively denied the right to take any depositions in support of its affirmative defenses in those actions." Yet, at page 17 of the transcript of the proceedings concerning Eastern's requests to take the depositions, the court below explicitly stated:

> With respect to the next of kin involved herein, Eastern is hereby directed to proceed in the first instance on written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure. Should the

answers received prove inadequate, Eastern may approach this bench for any relief it deems is appropriate.

Nothing in this decision, however, precludes Eastern from deposing the respective next of kin at or near their homes or from bringing them to New York at this time for depositions at its own expense.[11]

Thus, it appears that Eastern is free to obtain further discovery, necessary or otherwise, on matters relevant to its pleaded affirmative defenses, but in so doing it must not impose substantial hardships and economic burdens upon those from whom such information is sought. This compromise struck by the court below appears to be both eminently reasonable and to be fully justified in the circumstances. As the court below noted, all of the next of kin Eastern sought to depose reside in foreign countries, and most have minor children. Thus, a trip to New York would entail substantial personal inconvenience and financial expense. Moreover, Eastern has not shown that the information it seeks could not be obtained through further interrogatories. Nor has Eastern demonstrated that the traditional remedy for evasive or incomplete answers, an application to the trial court to impose sanctions pursuant to Fed.R.Civ.P. 37, would be unavailing here. We also note that the alleged necessary discovery mostly concerns decedents' income in previous years, the length and extent of the dependence of the next of kin on the decedents, and similar matters. Although we recognize that such information is highly relevant to the issue of damages, we regard it as having little or nothing to do with Eastern's pleaded affirmative defenses.

---

**10.** The same observation holds true for the other affirmative defense pleaded by Eastern, that plaintiffs lack the proper authorization from decedents' next of kin or personal representatives to institute these actions, as well as for Eastern's allegations concerning the effect of foreign laws on these actions.

**11.** The court below went on to note that several of the next of kin might be present in New York for the damage trials in these actions, and advised Eastern that it might depose such persons at that time. However, by the time of the

damage trials, hopefully Eastern's liability to particular plaintiffs would be resolved, so that it would be futile for Eastern to depose the next of kin at that time on matters relating to Eastern's presently pleaded affirmative defenses. But, as we note *infra*, most of the matters on which Eastern seeks additional discovery appear to be relevant only to the issue of damages. Therefore, delaying the deposition of the next of kin on these matters until the time of the damage trials would remain a viable option for Eastern.

Accordingly, although we believe that Eastern is entitled to additional discovery, we also believe that Eastern must adhere to the discovery procedure specified in the lower court's decision. Furthermore, because the information that Eastern may require in connection with its affirmative defenses appears to us to be quite limited and easily specified, we would suggest that the lower court on remand set an appropriate time limit for the promulgation of interrogatories by Eastern on these issues. Should the answers obtained in response to those interrogatories still prove deficient, we are confident that the lower court has ability to fashion the necessary remedy pursuant to Rule 37.

### D. Transfer of Cases to Other District Courts

Lastly, we consider the propriety of the district court, on remand, transferring certain of these cases to other district courts for further proceedings. Of course, such transfers would be permissible, as well as desirable, when the only issue remaining to be resolved concerns the amount of awardable damages. We, however, deal now with the present situation where all issues in these cases, liability as well as damages, have yet to be resolved.

With this litigation in such a posture, decisions relative to transfer of cases are best reserved for the district court below. That court is in the best position to determine the risk of inconsistent results, the prospect for swift resolution of this litigation, the hardship to the respective parties in each case that a transfer would entail, and the myriad other relevant factors which must be assessed in determining whether to transfer or to retain a particular case. We are confident that the parties on remand will bring such factors to the attention of the district court, and that, armed with such information, the court below can arrive at its decision without further guidance from us.

The judgments entered in the district court are reversed, and the causes are remanded to that court for further proceedings in accordance with this opinion.