MESKILL, Circuit Judge:
General Motors Corporation (GM) appeals from a judgment of the United States Bankruptcy Court for the District of Connecticut,[1] Krechevsky, J., denying its motion for a preliminary injunction and granting summary judgment for Bristol Industries Corporation (Bristol) and National Acceptance Company of America (NACA). We reverse the grant of summary judgment and remand.
BACKGROUND
On September 1, 1979, GM, through its Packard Electric Division,[2] entered into a “Tin Bronze and Phosphor Bronze Alloy Strip Conversion Agreement” (agreement) with Bristol,[3] pursuant to which GM shipped scrap metal to Bristol for conversion into alloy strips. Following receipt and inspection, the metal received from GM, which was segregated by alloy, was commingled with the scrap metal received from other toll customers, and a portion was used to produce GM’s alloy strips. As consideration for converting the metal, Bristol received a conversion price based upon the number of pounds converted. This agreement, which is termed a tolling arrangement, had a three-year term with monthly shipments to be made of the finished product.
Paragraph 4 of the agreement provided that GM would retain title to the toll metal until conversion, and, should the agreement be terminated, any unprocessed metal in Bristol’s possession would be returned. Paragraph 4 also provided that on the first of each month Bristol would determine whether the amount of toll metal on hand was sufficient to satisfy GM’s orders of alloy strips for the month; if insufficient, GM was required either to furnish or to authorize Bristol to purchase additional metal for GM’s account. Upon shipment of processed metal to GM, Bristol debited GM’s toll account and billed GM for the cost of conversion.
Bristol sustained net operating losses of $3,700,000 in 1980 and was sustaining comparable losses in 1981. As a result, in July 1981, Bristol decided to discontinue production of alloy strip and to concentrate on production of rod and wire. However, on August 20, 1981, Bristol filed a petition for reorganization under Chapter 11 of the Bankruptcy Act, 11 U.S.C. §§ 1101-1174 (Supp. Ill 1979). Bristol’s Summary of Debts and Property schedule disclosed total debts of $12,615,826.24, including secured debts of $6,814,125.98. NACA, with a claim of $6,753,541, is the principal secured creditor, holding a lien on Bristol’s real estate, accounts receivable, inventory and equipment.
On September 30, 1981, GM commenced the instant proceeding seeking preliminarily and permanently to enjoin Bristol from using metal attributable to its toll account “except pursuant to the [agreement]” or alternatively to compel Bristol to return any unconverted metal to GM. A hearing was held on GM’s preliminary injunction motion on October 7. On the day of the hearing, Bristol filed a motion to dismiss GM’s complaint. The hearing was recon *28 vened on October 9, at which time GM and Bristol entered into a stipulation restraining Bristol from depleting its inventory of toll metal below 1,493,303 pounds, or its monetary equivalent.[4] On October 27, NACA filed a motion to dismiss.[5]
The hearing resumed on November 18, and, after the testimony had been completed, oral argument was presented on the question of the propriety of injunctive relief and also on Bristol’s and NACA’s motions to dismiss. On November 23, Bristol filed , a memorandum in opposition to GM’s preliminary injunction motion and in the brief requested that the bankruptcy court treat Bristol’s motion to dismiss as a motion for summary judgment.
The bankruptcy court, on December 14, 1981, entered judgment for Bristol and NACA. The court, without giving notice to the parties, treated Bristol’s and NACA’s motions to dismiss as motions for summary judgment because “matters outside the pleadings have been considered.” The court found:
[GM’s] toll arrangement did not create a bailment, that the toll metal was transferred to Bristol as a means of financing Bristol’s operation, that [GM] retained title to the metal to provide security for performance of the agreement by Bristol, and that [GM], having failed to comply with the requirements of Article Nine [of the Uniform Commercial Code], does not have a validly perfected security interest in the metal.
On January 15, 1982, the parties entered into a stipulation preserving the status quo pending “final action with respect to the appeal herein or further order of this Court.”
DISCUSSION
On appeal, GM contends that the bankruptcy court failed to provide proper notice that it would treat Bristol and NACA’s motions to dismiss as motions for summary judgment. GM also submits that even if the motions were properly treated as ones for summary judgment, the bankruptcy court erred in granting summary judgment because material issues of fact existed. Finally, GM asserts that it has satisfied the criteria for a preliminary injunction and requests this Court to grant such relief.
GM does not dispute the bankruptcy court’s authority to treat the motions to dismiss as motions for summary judgment. Indeed, Fed.R.Civ.P. 12(b) compels such a result where matters outside the pleadings are presented to and not excluded by the court:
If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
Nevertheless, GM asserts that the bankruptcy court failed to afford it a reasonable opportunity to present evidence in opposition to summary judgment, as required by the rule. We agree.
In directing a court to treat a motion to dismiss as a motion for summary judgment, Rule 12(b) incorporates the notice periods set forth in Rule 56, which requires that motions for summary judgment “shall be served at least 10 days before the time fixed for the hearing,” Fed.R.Civ.P. 56(c). In this case, the bankruptcy court not only failed to afford GM ten days notice that the motions to dismiss would be considered motions for summary judgment, it failed to give any notice at all. As in Underwood v. Hunter, 604 F.2d 367, 369 (5th Cir. 1979) (per curiam), “[t]he first indication that the material produced for the hearing would be used to support a summary judgment was the Court’s order of dismissal.”
*29 Bristol concedes that the bankruptcy court failed to provide the formal ten-day notice period of Rule 56. Brief for Bristol at 29. However, Bristol argues that GM was not prejudiced because it was aware of the possibility that the motions to dismiss would be treated as motions for summary judgment and therefore presented or should have presented all of its opposing evidence at the hearings. Bristol’s argument implicitly rests upon holdings of several circuits which reject strict compliance with the ten-day notice rule in favor of a “harmless error” approach. See, e.g., Ikerd v. Lap-worth, 435 F.2d 197, 203 (7th Cir. 1970); Oppenheimer v. Morton Hotel Corp., 324 F.2d 766, 767-68 (6th Cir. 1963) (per curiam). While this Circuit has indicated its preference, see Winbourne v. Eastern Air Lines, Inc., 632 F.2d 219, 223 n.6 (2d Cir. 1980), for the position taken by the majority of Circuits, which adhere strictly to the ten-day rule, see, e.g., Hickey v. Arkla Industries, Inc., 615 F.2d 239, 240 (5th Cir. 1980) (per curiam); Winfrey v. Brewer, 570 F.2d 761, 764 (8th Cir. 1978); Adams v. Campbell County School District, 483 F.2d 1351, 1353 (10th Cir. 1973), it has never expressly rejected a “harmless error” approach. We see no need to do so here, because we find Bristol’s argument that GM was not prejudiced without merit.
The crux of Bristol’s position is that GM was aware that matters outside the pleadings had been presented to the court and therefore knew or should have known that Rule 12(b) would require the court to treat the motions to dismiss as motions for summary judgment. However, the evidence presented here related to GM’s motion for a preliminary injunction — not to the motions to dismiss. Bristol’s supporting citation to Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389 (6th Cir. 1975), where affidavits were filed in support of and in opposition to a motion to dismiss, is therefore inapposite. In addition, the court’s own comments to the parties indicated that it was considering the evidence outside the pleadings in connection with the preliminary injunction only:
I will attempt to get at this matter dealing with it as a basis for a temporary injunction only. I don’t have to decide the final case....
... I’ll attempt to get at this on the basis of a temporary injunction as soon as possible but I am not going to do it today.
Appellant’s App. at 64a. Accordingly, we cannot conclude that GM knew that the court would convert the motions to dismiss to motions for summary judgment. Nor can we accept Bristol’s position that GM should be charged with such knowledge in light of its awareness that matters outside the pleadings had been presented to and accepted by the court. Bristol’s position would effectively abrogate the notice provisions of Rule 56 and would place an undue burden upon a party seeking preliminary relief to present all of its evidence at a premature stage of the litigation to guard against the possibility that a court might, without prior notice, convert a motion to dismiss under Rule 12(b) to a motion for summary judgment.
Finally, even on the record before the bankruptcy court, it should have been clear that GM would desire to develop facts and submit briefs on its legal arguments.[6] The bankruptcy court’s failure to afford GM an opportunity to do so deprived GM of the very purpose of the notice requirement:
The notice requirements of Rule 12 guarantee that the automatic change of a motion to dismiss into a motion for summary judgment will not be accomplished by an unforeseeable thrust with no chance to parry. Notice is ascendant and primary in the Federal Rules. They do not tolerate foils of obfuscation.
*30 Georgia Southern and Florida Railway Co. v. Atlantic Coast Line Railroad Co., 373 F.2d 493, 498 (5th Cir.), cert. denied, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967).
Accordingly, we reverse the bankruptcy court’s grant of summary judgment and remand for further proceedings. In light of our holding that GM was given insufficient-notice, we express no views on GM’s alternate claim that the court erred in granting summary judgment because material issues of fact existed.
Finally, GM contends that it has satisfied the criteria for a preliminary injunction and asks this Court to grant such relief. We decline GM’s request. Because it granted summary judgment, the bankruptcy court found it unnecessary to rule on GM’s preliminary injunction motion. Although we believe that GM has raised substantial issues concerning the merits of the bankruptcy court’s decision as discussed in Judge Mansfield’s concurring opinion, we find that in light of our disposition, a remand to the bankruptcy court is appropriate to determine whether GM is entitled to preliminary relief.
Reversed and remanded.

. Direct appeal from the bankruptcy court is predicated upon Pub.L. No. 95-598, Title IV, § 405, 92 Stat. 2686 (1978), which provides in pertinent part:
(c)(1) During the transition period, an appeal from a judgment, order, or decree of a United States bankruptcy judge shall be—
(B) if the parties to the appeal agree to a direct appeal to the court of appeals for each circuit, then to such court of appeals;
On December 23, 1981, the parties entered into a stipulation for a direct appeal to this Court.

. For convenience, we shall refer to GM and Packard collectively as GM.

. When the 1979 agreement was entered into Bristol was doing business as Mill Products Corporation.

. The parties agreed that the stipulation would remain in effect through November 18, 1981. At the conclusion of the November 18 hearing, the bankruptcy court ordered that the stipulation would remain in force until it acted on GM’s preliminary injunction motion.

. NACA, although a party to this action, has filed no brief in this appeal.

. As GM noted at oral argument, had it been given the opportunity, it would have presented evidence on, inter alia: (1) the history and economic purposes of tolling; (2) the industry’s views on tolling; (3) the history of Bristol’s discontinuance of its strip operation; (4) the alleged discriminatory treatment of GM by Bristol; (5) the indicia of ownership of the toll metal; (6) the representations made to Bristol’s creditors concerning the toll metal; and (7) Bristol’s practices with other toll customers.