**WESTERN FIRE INSURANCE COMPANY, Plaintiff/Counter Defendant-Appellee,**

v.

**Alva Sherwood COPELAND, Insured and Mrs. Alva Sherwood Copeland, Insured, and United States Small Business Administration, Defendants/Counter Claimants-Appellants.**

**No. 84–4815.**

United States Court of Appeals, Fifth Circuit.

April 4, 1986.

C.R. McRae, Margaret E. Ellis, Pascagoula, Miss., for defendants/counter claimants-appellants.

Robert H. Pedersen, Watkins & Eager, Jackson, Miss., for plaintiff/counter defendant-appellee.

Before BROWN, JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Alva Sherwood Copeland and his wife appeal from the district court's judgment arising out of their insurance claim for a loss resulting from damage to their business/residence during Hurricane Frederick. The district court granted summary judgment in favor of the insurer, Western Fire, on the Copelands' claim for punitive damages. After a jury verdict on the Copelands' contractual claim, the district court entered judgment that Western Fire pay the Copelands $42,337.00 under the insurance policy. The insureds, Mr. and Mrs. Alva Sherwood Copeland, argue that the district court erred in granting summary judgment in favor of the insurer, Western

Fire, on the Copelands' claim of punitive damages. The Copelands also argue that the jury's assessment of loss on their contractual claim under the insurance policy is against the great weight of the evidence. This Court vacates and remands the district court's granting of summary judgment on the punitive damages claim; we affirm the district court's judgment upholding the jury's verdict on the Copelands' contractual claim.

## I. BACKGROUND

On September 12, 1979, Hurricane Frederick caused extensive damage along the Gulf Coast in Mississippi and Alabama. During the storm, the business/residence of the Copelands sustained significant damage. The Copelands' building, a thirty-six year old brick veneer church in Pascagoula which had been renovated, served as the Copelands' residence and as the facility for their family-run school and day-care center.

The Copelands carried insurance with Western Fire. The Copelands' policy provided coverage for windstorm damage up to the policy limit of $60,000.00. The policy stated that the insurance coverage was "without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair...." The parties concede that windstorm damage was a covered peril within the policy terms.

After the hurricane's departure, the Copelands submitted a claim under the policy asking Western Fire to pay them the policy limit of $60,000.00. On September 21, 1979, Western Fire sent an independent adjuster, John Wilson, to inspect the Copelands' loss. The Copelands told Wilson that the City of Pascagoula had condemned the property and showed him a condemnation notice and a letter from the City stating that the building was unsafe to occupy at that time. The Copelands had also been informed by the State Health Department, which controlled the license of the Copelands' day-care center, that the building could not be used for that purpose. After several inspections of the building, inspec-

tor Wilson estimated that the windstorm damage could be repaired for $22,277.69. After deductions for depreciation and a $150.00 deductible, inspector Wilson determined that Western Fire's liability on the insurance policy was $19,870.42.

During one of inspector Wilson's visits to the Copelands, the Copelands gave Wilson a letter from Kendall Construction Co. stating that it was that company's "firm and fixed opinion that no repair work should be attempted on this building."[1] After receiving the letter, inspector Wilson hired a civil engineer, L.J. Compton, to inspect the building. According to inspector Wilson's testimony, Wilson's sole purpose in hiring Compton was to determine whether the building was repairable. While engineer Compton found structural damage in the building, he thought that the building was repairable. Wilson did not ask Compton to prepare an estimate of the cost of such repairs.[2] After receiving Compton's report, inspector Wilson contacted the Copelands, who directed him to their attorney. Wilson presented the Copelands' attorney with a proof of loss statement showing Western Fire's liability to be $19,870.42. The Copelands rejected this statement.[3]

Inspector Wilson then submitted his report to Western Fire. Western Fire filed suit on January 9, 1980, seeking declaratory relief that the insurer was liable for no more than $19,870.42, which it tendered into the court's registry. A year later, and after a default judgment had been entered against the Copelands, the Copelands answered Western Fire's complaint and alleged in a counterclaim that Western Fire had breached its insurance policy in bad faith by failing to pay for the windstorm damage. The Copelands asked for an award of punitive damages, as well as their actual contractual damages. After a hearing, the district court set aside the entry of default judgment.

In 1983, the nonjury trial of Western Fire's declaratory action was held. After hearing two days of testimony, the district court denied the request for declaratory relief. The district court stated:

It is clear from the above that there are direct conflicts in testimony. The Court has before it the cost of replacement work that Western Fire felt needed to be done. However, it is clear from the testimony of Mr. Compton that the damage was much more severe. The Court does *not* have before it the additional quantity of work that would be necessary to salvage the insured premises in accordance with the evaluation of Mr. Compton. Thus, the Court finds the evidence insufficient to render any declaratory judgment adjudicating the amount of Western Fire's liability.

In this situation, the Court feels that it may properly refuse declaratory relief.

Record Vol. II at 329 (emphasis original and citation omitted).

After discovery was reopened, the court turned to a jury trial of the Copelands' counterclaim for contractual and punitive damages. On the first day of trial, while the district court and counsel were awaiting the arrival of a juror, Western Fire made an oral motion for summary judgment on the Copelands' claim for punitive damages. Western Fire had not filed such a motion previously. Without giving any opportunity to the Copelands to present evidence, the district court indicated that it would grant the motion. After some argument but with no presentation of evidence,

---

**1.** Kendall Construction Co. also estimated that necessary repairs on the building would cost $69,775.00. According to inspector Wilson's testimony, he did not receive a copy of the estimate. Record Vol. IV at 148. Shelby Moore, a Western Fire official, stated in proffered testimony that he received the estimate at some time but rejected it since it was not itemized.

**2.** At trial, engineer Compton testified that he thought inspector Wilson's estimate was approximately 25% low while Kendall Construction's estimate was somewhat high.

**3.** After the instant litigation commenced, the Copelands demolished the building and replaced it with another building. During the litigation, various lienholders on the Copelands' property were parties. At the time of this appeal, the Small Business Administration was the only lienholder which remained an interested party.

the district court in fact granted the motion. During trial, in the absence of the jury, the Copelands proffered some testimony relevant to their claim for punitive damages. The district court excluded the testimony. There is no indication in the record that the district court reconsidered its granting of the motion for summary judgment.

The case proceeded to trial before the jury on the Copelands' claim for their contractual damages under the insurance policy. The testimony of the Copelands' witnesses indicated that their loss from the hurricane exceeded the policy limits of $60,-000.00 while the testimony of Western Fire's witnesses indicated a significantly lower amount. The jury assessed the Copelands' damages at $42,337.00. The district court entered judgment in that sum and denied the Copelands' motion for a new trial and judgment notwithstanding the verdict. The Copelands appeal.

## II. THE MERITS

The Copelands' primary contentions are (1) the district court erred in granting Western Fire summary judgment on the issue of punitive damages, and (2) the jury's assessment of their insurable loss was against the overwhelming weight of the evidence.

### A. *The Summary Judgment*

No written motion for summary judgment had been filed by any party prior to the time that Western Fire made an oral motion for summary judgment on the day of trial. Without allowing the Copelands an opportunity to present evidence or affidavits, the district court granted the motion on the same day it was orally made.

█ Federal Rule of Civil Procedure 56(c) prescribes the procedure for determining a motion for summary judgment:

(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Importantly, Rule 56(c) prescribes a ten-day notice period prior to the district court's granting a motion for summary judgment; this Court has noted its strict enforcement of this opportunity to be heard. *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir.1979). "The ten-day notice provision of Rule 56 is not an unimportant technicality, but serves substantial interests of litigants before federal courts." *Id.* This Court has noted that a party should not "los[e] its case without a full opportunity to be heard." *Georgia Southern & Florida Railway Co. v. Atlantic Coast Line Railroad Co.*, 373 F.2d 493, 497 (5th Cir.), *cert. denied*, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967). Other courts have noted the importance of a litigant's procedural right to be heard before the district court precludes the opportunity of trial. The Second Circuit has noted, "[T]he purpose of the advance notice provision in Rule 56(c) is to permit the non-moving party a reasonable and meaningful opportunity to challenge the motion." *Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d 219, 223 (2d Cir.1980). Moreover, even where the motion for summary judgment is made on the day of trial, "a district court must comply with the ten days requirement." *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 135 (6th Cir.1979).

█ In the instant case, the district court granted Western Fire's oral motion for summary judgment on the issue of punitive damages without affording the Copelands either the ten-day notice of Rule 56(c) or an opportunity to present their evidence. Such action precluded the Copelands from being "given an opportunity to present

every factual and legal argument available." *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir.1984) (applying Fifth Circuit cases). It must therefore be concluded that the district court erred in denying the Copelands an adequate procedural opportunity to present their punitive damages claim before preempting it by summary judgment. *See* Fed.R.Civ.P. 56(c).

Western Fire suggests that any procedural error was harmless. While this Court has recently recognized that denying the ten-day notice may be harmless under the facts of a particular case, *see Norman v. McCotter*, 765 F.2d 504, 508 (5th Cir. 1985), the Court has also stressed that it "has consistently refused to dispense with the procedural safeguards set forth in [Rule 56(c)]." *Hanson*, 608 F.2d at 131.[4] Having examined the pretermitted record before this Court, we must agree with the conclusion reached by the Court in *Hanson:* "While we do not decide whether disputed questions of fact appear in the record before us, it is clear that if plaintiffs had been given ten days to answer defendants' contentions, they might have avoided the result reached [in the trial court]." *Hanson*, 608 F.2d at 131. Thus, we leave for the trial court to determine in the first instance whether summary judgment is appropriate here.

On remand, Western Fire remains free to reurge its motion for summary judgment. In determining the outcome of such motion, the trial court on remand may consider the evidence admitted in the prior proceedings, as well as additional evidence. If granting such a motion in Western Fire's favor is warranted after the district court has given proper notice, the district court may reenter its prior judgment. If the district court denies the motion, the court may try separately the issue of punitive damages. *See Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So.2d 833, 843 & n. 4 (Miss. 1984) (court's opinion on petition for rehearing) (suggesting that issue of punitive damages be tried separately from contractual claims).[5]

### B. *The Jury's Verdict*

■ The Copelands also assert that the jury's verdict of $42,337.00, as the amount of Western Fire's contractual liability, is against the overwhelming weight of the evidence. Other than to assert conclusively that the jury's verdict represented an impermissible "compromise," the Copelands fail to articulate the basis for their assertion. The Court has examined the record and holds that the jury verdict is supported by that examination. The Copelands' attack on the jury verdict is without merit.[6]

### III. CONCLUSION

The district court's summary judgment is VACATED and REMANDED for further

---

4. Other courts have criticized the use of the harmless error doctrine where the party was not given an adequate opportunity at the trial level. *See Winbourne*, 632 F.2d at 223 & n. 6. *See also Gutwein v. Roche Laboratories*, 739 F.2d 93, 95 (2d Cir.1984) (expressing strong preference for ten-day rule and noting harmless error doctrine should be restricted "to extraordinary cases in which the ten day notice is impractical, and it is absolutely clear that the non-moving party suffered no prejudice from a shortening of the period"). Moreover, the trial court, rather than the appellate court, in most instances should be the judicial body to evaluate in the first instance the nonmoving party's evidence on a motion for summary judgment.

5. The Copelands also assert that the trial court erred in denying them the opportunity to cross-examine a Western Fire representative concerning reserves the carrier established to cover any judgment in this litigation. To the extent that the Copelands assert that such evidence should have been admitted on the trial of their contractual damages, we see no abuse of discretion in denying such examination. To the extent that the Copelands wish to introduce such evidence on remand on the issue of punitive damages, we leave the determination to the trial court, although the Court notes that the Copelands' present arguments fail to indicate the grounds for admitting such evidence.

6. The Copelands also contend that the district judge should have recused himself. The Copelands present no substantial argument to support their assertion, and it is rejected. We also see no merit to the Copelands' argument that Mississippi's valued policy statute, *see* Miss.Code Ann. § 83-13-5, applies to this case.

**654**

proceedings consistent with this opinion. The judgment of the district court that the Copelands recover $42,337.00 on their contractual damages is AFFIRMED.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.